IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEGAN LISOTA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>HEARTLAND DENTAL, LLC, a Delaware limited liability company, and RINGCENTRAL, INC., a Delaware corporation,<br><br>*Defendants*. | Case No. 25-cv-7518 |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Megan Lisota brings this Class Action Complaint and Demand for Jury Trial against Defendants Heartland Dental, Inc and RingCentral, Inc. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief.

### I. NATURE OF THE ACTION

1. Defendant Heartland Dental, LLC ("Heartland") is a dental support organization ("DSO") that provides services related to non-clinical aspects of running a practice, such as billing, insurance, staffing, and marketing. Heartland Dental is the largest DSO in the United States and has partnered up with over 1,700 dental practices and over 2,800 doctors nationwide.

2. Heartland employs a cloud-based contact center provider called Defendant RingCentral, Inc. RingCentral listens to and analyzes phones calls in real time using its Artificial Intelligence (AI) product. For example, RingCentral's AI product transcribes and summarizes calls, conducts sentiment analysis to determine a caller's emotional tone, and generates keywords and phrases from the call.

3.       Heartland incorporated the RingCentral phone system and the RingCentral AI product into call center services that it provides to its dental practice partners.  That means patients calling a local dental practice affiliated with Heartland had their calls listened to and analyzed by RingCentral and its sophisticated artificial intelligence algorithms.  Patients calling a local dental office are not informed that an unknown third-party (in this case, the provider of the telephone service, RingCentral) is listening in on the calls and analyzing them using artificial intelligence without the patients' knowledge and consent.

4.       As such, Heartland Dental intercepted or procured another person to intercept sensitive communications between Plaintiff and the Class and their healthcare providers in violation of 18 U.S.C. § 2511.

## II.     PARTIES

5.       Plaintiff Megan Lisota is a natural person who resides in this District.  Several times within the past two years, Ms. Lisota has called her dental office, which is part of the Tru Family Dental chain and which utilizes Heartland's DSO services.  Upon information and belief, Ms. Lisota's phone calls to Tru Family Dental offices were intercepted by RingCentral and the RingCentral AI product without her knowledge or consent.

6.       Defendant Heartland Dental, LLC is a limited liability company organized and existing under the state of Delaware with at least one of its member mangers located in Illinois and its principal place of business located at 1200 Network Centre Drive, Suite 2, Effingham, Illinois 62401.

7.       Defendant RingCentral, Inc. is a Delaware corporation with its headquarters located in Belmont, California.  It provides cloud-based telephone services to customers in Illinois, including Heartland Dental and its affiliated dental practices, and upon information and belief has intercepted phone calls between Ms. Lisota and her dental office, as well as between members of the Class and their dental offices.

### III. JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

9. This Court has personal jurisdiction over Defendants because Defendants conduct business in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, in a substantial part, in the District.

### IV. COMMON FACTUAL ALLEGATIONS

#### A. Overview of RingCentral AI

11. RingCentral is as an Internet-based telephone provider allowing businesses to place and receive phone calls and messages using RingCentral instead of a traditional telephone provider.

12. RingCentral developed proprietary artificial intelligence software called RingCentral AI. RingCentral invites businesses to use its product to "power every interaction with AI that integrates seamlessly across your calls, messages, meetings, and contact center. Personalize customer experiences, get real-time insights, and create effortless workflows across all your conversations."

13. The RingCentral AI is a suite of features that listens to phone calls in the background and analyzes conversations in real-time. The features that make up RingCentralAI include, among others, (i) real-time voice transcription, (ii) call highlights, (iii) automated call summaries and (iv) sentiment voice analysis.

14. RingCentral quietly listens to calls and creates a transcript of everything being spoken. RingCentral explains that its "live transcription feature" allows it to "keep a record of who-said-what with automatic voice transcription, complete with speaker identification, in your phone and video calls." RingCentral elaborates, "RingSense AI uses speech recognition and language learning models to turn conversations into live transcripts. Real-time AI transcription lets you focus on the conversation at hand, not taking notes." RingCentral's marketing materials directed at healthcare organizations like Heartland Dental specifically tout RingCentral's ability to "capture and transcribe key details from patient, payer and provider calls in real-time."

15. RingCentral's call summary and call highlights also "provide concise and easy to understand AI-generated synopsis of calls" and allows RingCentral's customers to "see AI-generated key phrases, next steps, and follow-up items."

16. The voice analysis feature provides sentiment analysis to determine a consumer's mood while speaking on the call. RingCentral states its AI "detect[s] the emotional tone of a phone conversation." RingCentral further elaborates, "sentiment analysis is a powerful customer experience tool that allows your business to understand a person's emotional state during a conversation. AI analyzes tone and language to find patterns that indicate positive, neutral, or negative emotions."



(**Figure 1,** showing RingCentral's live transcription, call summary, and sentiment analysis features.)

### B. Heartland Dental Allowed RingCentral to Monitor Patient Calls in Real Time

17. Heartland Dental is a dental service organization, or DSO, that provides non-clinical support to dental practices. A DSO can provide marketing, administrative, IT, accounting, and HR support to clinics. Heartland is the largest DSO in the United States.

18. Heartland partners with over 2,800 dentists nationwide and provides DSO services to independently owned dental practices. Dental practices that partner with Heartland retain their own business name and are usually separately owned and managed entities from Heartland.

5

19. As a part of its DSO services, Heartland upgraded its dental partners' phones into one single system administered by RingCentral. The system Heartland chose is the "RingEx" platform that RingCentral promotes as having the ability to "call, text, meet, and send faxes—all in one. AI-powered business communications platform."

20. Heartland also provides after hour and overflow call center services to its partner dental practices using the RingCentral Contact Center product to manage and route patient calls. When a patient calls a dental practice, the system automatically routes certain calls made to local dental practices to a Heartland Patient Service team depending on the local clinic's availability.

21. Heartland's Vice President of Patient Services Jeremy Stroud explains, "If a caller identifies as a new patient, we let the call ring just a few times at the local practice before transferring it to our Patient Services team . . . . We also understand that existing patients are the lifeblood of our supported doctors' practices. So, when callers identify as existing patients, we let those calls ring a few more times at the practice before we grab them, because we want to give the local staff a chance to have those conversations and build those relationships."

22. Heartland has implemented and heavily relies on RingCentral's artificial intelligence services—allowing an unknown third-party to listen and analyze patient calls. RingCentral and Heartland reveal that "Heartland Dental has also taken advantage of RingCentral's scripting and routing options to integrate an artificial intelligence solution into RingCentral Contact Center." Mr. Stroud further explains that the RingCentral AI app listens to all calls made to its supported practices:

> **The AI app reviews all calls that come into the supported practices, *in real-time*,** and flags the ones from new patients where we might have missed an opportunity to set an appointment. Then the AI sends those numbers into an outbound call queue for our agents, who typically respond back to the patient within 10 minutes. Here's the incredible part: 20+% of those callbacks result in a new patient. (emphasis added)

23. Unbeknownst to consumers calling a local dental practice, an unknown third party—RingCentral—is monitoring and analyzing patient calls with its proprietary artificial

6

intelligence algorithms in real-time. RingCentral is an entirely separate entity from the local dental clinic, and acts as an unannounced listener and auditor of patients' phone calls.

24. A patient like Plaintiff or any member of the Class calling their local dental practice to schedule a dentist visit or inquire about a billing issue, for example, is not informed that a DSO like Heartland not only allowed a third-party RingCentral to listen to their calls but also to perform sophisticated analysis of the call in real-time.

25. Heartland's use of RingCentral's artificial intelligence is particularly pernicious due to the nature of the calls being intercepted and analyzed. Plaintiff's and the Class members' calls include individually identifiable health information about their medical treatments.

26. Plaintiff and the Class members are existing or prospective dental patients. They are contacting their local dental office seeking medical treatment or inquiring about a past dental procedure or payment related to their dental treatments. Plaintiff and the Class members are identified by their names and phone numbers and other identifying characteristics when contacting their dental clinics.

27. To make matters worse, RingCentral not only listens to and analyzes patient calls on Heartland's behalf, but also uses patient calls for its own purpose: to train its AI models and develop its own products and services for other customers.

28. RingCentral's privacy policy governs the relationship between Heartland and RingCentral. It specifically allows RingCentral to use patient calls to improve its own product. The RingCentral Data Processing Addendum § 3.3 states, "RingCentral shall process the Customer Personal Data [...] (ii) for the purposes of providing, monitoring, supporting, improving, and maintaining the Services." The RingCentral Customer United States Privacy Terms, which are specific to its US customers, further state: "RingCentral shall process the Customer Personal Information for the purposes of the performance of the Services as described in the Agreement and the DPA except where otherwise required or permitted by US State Privacy Laws. Such purposes include providing, monitoring, supporting, improving, and maintaining the Services, including through automated means such as artificial intelligence."

29. Neither Heartland nor RingCentral obtained any consent from patients to eavesdrop on their conversations, analyze their calls with artificial intelligence, or use the content of the conversations to develop its own products or services.

30. By agreeing to RingCentral's terms and implementing RingCentral's phone systems, Heartland has effectively granted an unknown third-party, RingCentral, the ability to eavesdrop on patient phone calls in real-time without patient consent.

## V. FACTS SPECIFIC TO PLAINTIFF

31. Plaintiff Megan Lisota called a Heartland supported dental clinic several times within the last two years. During the calls, Plaintiff identified herself by her name and inquired about making appointments to receive medical treatment.

32. Heartland allowed RingCentral to eavesdrop on the calls and analyze them using artificial intelligence in real-time.

33. Ms. Lisota was not informed, nor did she reasonably have a reason to believe, that any third-party was surreptitiously eavesdropping and analyzing her calls.

34. Plaintiff did not give Defendants or anyone else consent or permission to eavesdrop and analyze her calls.

## VI. CLASS ACTION ALLEGATIONS

35. **Class Definition**: Plaintiff Megan Lisota brings this proposed class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class of others similarly situated, defined as follows:

> All U.S. residents who made or received a phone call to/from Heartland Dental and/or a Heartland Dental-managed clinic that was processed by RingCentral.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their officers and directors; (3) persons who properly execute and file a timely request

8

for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

36. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but upon information and belief it is at least several thousand people. Individual joinder is impracticable. Upon information and belief, Defendant Heartland allowed an unannounced third-party, RingCentral, to surreptitiously eavesdrop on and analyze Class members' phone calls. Class members can be identified through Defendants' records.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the proposed Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

   a. Whether Defendants intercepted or procured any other person to intercept any of Plaintiff's and Class members' communications;
   b. Whether RingCentral's software is a device used to intercept Plaintiff's and the Class members' communications;
   c. Whether Defendants obtained consent from Plaintiff and the Class to intercept or procure another person to intercept their communications; and,
   d. Whether Plaintiff and the Class were injured by Defendants' conduct.

38. **Typicality**: Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by Defendants' conduct.

39. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. Plaintiff and the Class members sustained damages because of Defendants' conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to

vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

40. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

41. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**CAUSE OF ACTION**
**Violation of the Federal Wiretap Act**
**18 U.S.C. § 2510** *et seq.*
**(On behalf of Plaintiff and the Class)**

42. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43. The Federal Wiretap Act creates a private right of action against any person who "intercepts . . . or procures any other person to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

44. By partnering with RingCentral to eavesdrop on Plaintiff and the Class members' telephone conversations in real-time, Defendant Heartland allowed Defendant RingCentral to intercept, or procured RingCentral to intercept, the content of wire and/or oral communications.

45. Defendants' actions were intentional. On information and belief, Defendant Heartland knew the capability of Defendant RingCentral's telephone software and implemented its eavesdropping and artificial intelligence features on Plaintiff's and the Class members' phone calls.

46. Defendant RingCentral's software is an "electronic, mechanical, or other device" that is used to intercept Plaintiff's and Class member's communications with their dental clinic.

47. Plaintiff and the Class members did not consent to having their wire and/or oral communications intercepted and analyzed by anyone—let alone an unknown third-party utilizing sophisticated artificial intelligence that transcribes, summarizes, and analyzes the calls, and uses them to train its AI models.

48. Worse yet, Defendant RingCentral was not an announced party to the communication between Plaintiff and the Class members and their dental clinics. RingCentral intercepted Plaintiff and the Class members' communications for the purposes of violating 42 U.S.C. § 1320d-6 of the Health Insurance Portability and Accountability Act ("HIPAA").

49. HIPAA § 1320d-6 imposes federal criminal liability to anyone who obtains "individually identifiable health information" (or "IIHI") relating to an individual, or discloses it to another person. IIHI is any information that:

> (A) is created or received by a health care provider . . . and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and— (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320d(6).

50. As alleged above, Plaintiff and the Class are past, present, and future patients or potential patients of dental practices inquiring about the provision of health care services (*i.e.* dental medical treatments). Similarly, Plaintiff and the Class are discussing and inquiring about the payment for their dental treatments. Plaintiff and the Class have identified themselves by their name and RingCentral has collected their phone number and other information which serves to identify them.

51. Plaintiff and the Class have suffered harm because of Defendants' violation of the Federal Wiretap Act and now seek statutory damages of whichever is the greater of $100 a day

11

for each day of violation per Class member or $10,000 per violation per Class member pursuant to 18 U.S.C. § 2520(c)(2)(B), or any profits made by Defendants as a result of the violation under 18 U.S.C. § 2520(c)(2)(A).

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Megan Lisota individually and on behalf of the Class, prays for the following relief:

(a) An order certifying the Class as defined above, appointing Ms. Lisota as the representative of the Class, and appointing her counsel as Class Counsel;

(b) An order declaring that Defendants' actions, as set out above, violate the Federal Wiretap Act;

(c) An injunction requiring Defendants to cease all violations of the Federal Wiretap Act;

(d) An award of statutory damages, disgorgement of profits, costs, and attorneys' fees; and,

(e) Such other and further relief that the Court deems reasonable and just.

## VIII. JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried

Respectfully submitted,

Dated: July 3, 2025

By: */s/ Yaman Salahi*

Yaman Salahi
yaman@salahilaw.com
Nicole Cabañez (*pro hac vice* forthcoming)
nicolec@salahilaw.com
**SALAHI PC**
505 Montgomery Street, 11th Floor
San Francisco, CA 94111
Tel: (415) 236-2352

*Counsel for Plaintiff and the proposed Class*