IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MEGAN LISOTA, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-7518 |
| HEARTLAND DENTAL, LLC, a Delaware limited liability company and RINGCENTRAL, INC., a Delaware corporation, | Honorable Lindsay C. Jenkins |
| Defendants. | |

## DEFENDANT RINGGENTRAL, INC.'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant RingCentral, Inc. ("RingCentral") respectfully moves the Court for an order dismissing with prejudice Plaintiff Megan Lisota's ("Plaintiff") Class Action Complaint and Demand for Jury Trial, ECF No. 1 ("Complaint") asserting that RingCentral and Heartland Dental, Inc. ("Heartland") violated the Federal Wiretap Act, 18 U.S.C. § 2511(d) (the "Motion"). The grounds for this Motion, as discussed more fully in the accompanying Memorandum of Law incorporated by reference herein, are as follows:

1. Plaintiff lacks standing to pursue her claims because she fails to allege facts showing that Plaintiff herself (as opposed to hypothetical individuals like her) was actually subjected to and injured by the RingCentral technologies about which she complains.

2. Plaintiff's Federal Wiretap Act claim fails because RingCentral was a party to the allegedly intercepted communications because it did nothing more than provide a tool to permit

Heartland to record and analyze its own data, and Heartland consented in any event to the alleged interception.

3. Plaintiff's Federal Wiretap Act claim fails because the alleged activities at issue were offered and performed by RingCentral in its ordinary course of business, and are therefore, exempt from liability.

### CERTIFICATE OF ATTORNEY CONFERENCE

Pursuant to the Court's Case Procedure regarding Motion Practice, the Parties conferred on August 28, and September 11, 2025, regarding the bases for this Motion. RingCentral understands that Plaintiff will oppose the motion. The Parties have agreed to the following briefing schedule for the Motion:

- Plaintiff shall file her Opposition by October 10, 2025.
- Defendants RingCentral and Heartland shall file their Replies by October 31, 2025.

Dated: September 12, 2025          Respectfully Submitted,

By: */s/ Michael M. Rosenberg*
Michael M. Rosenberg (Ill. Bar No. 6340654)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
353 N. Clark Street, Ste. 3600
Chicago, IL 60654
Tel: (312) 924-9800
mrosenberg@orrick.com

Jacob M. Heath (Pro Hac Vice)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 614-7400
jheath@orrick.om

Sarah B. Meehan (N.D. Ill. Bar. No. 1658586)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202)339-8400
smeehan@orrick.com

*Attorneys for Defendant RingCentral, Inc.*

## CERTIFICATE OF SERVICE

I, Michael M. Rosenberg, an attorney, do hereby certify that on September 12, 2025, I electronically filed the foregoing **DEFENDANT RINGGENTRAL, INC.'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM** with the Clerk of Court for the U.S. District Court, Northern District of Illinois, using the Electronic Case Filing system of the Court. I hereby certify that CM/ECF will serve the document on the following parties:

Yaman Salahi
yaman@salahilaw.com
Nicole Cabañez
nicolec@salahilaw.com
**SALAHI PC**
505 Montgomery Street, 11th Floor
San Francisco, CA 94111
*Attorneys for Plaintiff*

Danielle M. Kays
dkays@fisherphillips.com
**Fisher & Phillips LLP**
10 S. Wacker Drive
Suite 3450
Chicago, IL 60606

Amber N. Peters
apeters@fisherphillips.com
**Fisher Phillips LLP**
227 W. Trade Street
Suite 2020
Charlotte, NC 28202
*Attorneys for Heartland Dental, LLC*

*/s/ Michael M. Rosenberg*
Michael M. Rosenberg

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MEGAN LISOTA, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-7518 |
| HEARTLAND DENTAL, LLC, a Delaware corporation, and RINGCENTRAL, INC., a Delaware corporation, | Honorable Lindsay C. Jenkins |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF RINGCENTRAL, INC.'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................................. 2

III. LEGAL STANDARD .......................................................................................................... 3

IV. ARGUMENT ....................................................................................................................... 4

    A. Plaintiff's Complaint Must Be Dismissed for Lack of Standing Because She Has Failed to Plead Facts Showing that She Suffered Any Harm. .................. 4

    B. Plaintiff's Complaint Must Be Dismissed for Failure to State a Claim Because She Has Failed to Plead Facts Showing a Violation of the Federal Wiretap Act. ........................................................................................................... 6

        1. Plaintiff's allegations make clear that RingCentral's actions were undertaken with consent. ............................................................................ 6

        2. Plaintiff's allegations separately make clear that RingCentral is immune from liability because the services at issue here were offered in its "ordinary course of business." ........................................... 10

V. CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................4, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................4

*In re Google, Inc. Priv. Pol'y Litig.*,
    C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)......................................10, 11

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................................7

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
    982 F.3d 1060 (7th Cir. 2020) ........................................................................................4

*Licea v. Am. Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023) ..........................................................................7

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
    No. 24-cv-00382, 2025 WL 880538 (W.D.N.C. Mar. 20, 2025) .....................................8

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ..........................................................................................4

*Stein v. Edward-Elmhurst Health*,
    No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025)...................................9, 10

*Williams v. TMC Health*,
    No. CV-23-00434, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ...................................8

*Zuniga v. Asset Recovery Sols.*,
    No. 17-cv-05119, 2018 WL 1519162 (N.D. Ill. Mar. 28, 2018) .....................................5

**Statutes & Rules**

18 U.S.C. § 2510(5)(a)...............................................................................................................11

18 U.S.C. § 2511................................................................................................................6, 7, 8

42 U.S.C. § 1320d-6 ..........................................................................................................3, 8, 9

Federal Rule of Civil Procedure 12(b).................................................................................3, 4

**I.       INTRODUCTION**

In recent years, there has been an explosion of lawsuits asserting that all manner of routine telecommunications technologies—from website customer-support chatbots, to the basic interconnection services that allow computers to connect to websites—run afoul of laws enacted decades ago to outlaw wiretapping. *See generally*, Joshua Briones et al., *Data Privacy Lawsuits Rise as Lawyers Dust Off Wiretapping Laws*, Bloomberg Law (Apr. 23, 2024), https://news.bloomberglaw.com/us-law-week/data-privacy-lawsuits-rise-as-lawyers-dust-off-wiretapping-laws. Typically, those lawsuits invoke the laws of California or a handful of other states. That is because most wiretapping laws—including the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*—so clearly do not apply to these commonplace technologies that they are of little use in supporting these creative new theories.

This suit attempts to buck that trend. Plaintiff asserts that RingCentral, a provider of communications technologies, such as voice-over-IP calling and software that allows its customers to automatically generate transcripts of their own phone calls, violated the Federal Wiretap Act—and only the Federal Wiretap Act—by providing those services to Heartland Dental, who in turn used them to supply administrative support to local dental practices. As an initial matter, however, the Complaint's claim fails to even get off the blocks, as it fails to allege facts showing that Plaintiff herself (as opposed to hypothetical individuals like her) was actually subjected to the RingCentral technologies about which she complains.

More fundamentally, though, in advancing that single claim, the Complaint serves only to show why the Federal Wiretap Act has fallen so far out of favor in these kinds of actions. Indeed, its own allegations affirmatively establish that the Federal Wiretap Act does not apply for at least two reasons: *First*, the Federal Wiretap Act is a one-party consent statute, meaning that it does not apply to any person who acts with the consent of even a single party to the communication,

1

including RingCentral here, whose acts were all undertaken only because Heartland Dental asked it—indeed, contracted with it—to do so. *Second*, the Federal Wiretap Act by its own terms does not apply to the actions of a company undertaken in its "ordinary course of business," which the Complaint makes clear—by illustrating at some length with RingCentral's own marketing materials—is true of the services at issue here.

Plaintiff's Complaint thus fails as a matter of law, for multiple reasons. Because these deficiencies are not curable by amendment, it should be dismissed with prejudice.

## II. FACTUAL BACKGROUND

Heartland Dental is a "dental support organization" that provides administrative support to dental practices across the country. Compl. ¶¶ 1, 17. Among other services, Heartland "upgraded its dental partners' phones into one single system." *Id.* ¶ 19. That phone system is "administered by RingCentral," a voice-over-IP provider that enables customers to "place and receive phone calls and messages" over the internet "instead of a traditional telephone" line. *Id.* ¶¶ 11, 19. As alleged by Plaintiff, Heartland's phone system includes "cloud-based contact center" services, including "a suite of features" that incorporate "artificial intelligence" to improve how dental practices connect with existing and prospective patients. *Id.* ¶¶ 2, 12-13. For example, RingCentral purportedly offers the ability to transcribe "phone and video calls" and generate "call summaries." *Id.* ¶¶ 13-14.

As alleged in the Complaint, RingCentral's privacy terms provide that the company "shall process" customers' personal information "for the purposes of the performance of the Services" only, "except where otherwise required or permitted by US State Privacy Laws." *Id.* ¶ 28. The privacy terms specify that "[s]uch purposes include providing, monitoring, supporting, improving, and maintaining the Services." *Id.* The terms also note that those acts—say, providing call center services—may involve "automated means such as artificial intelligence." *Id.*

2

The Complaint alleges that dental patients suffered legal harm when "contacting their local dental office seeking medical treatment or inquiring about a past dental procedure or payment related to their dental treatments." *Id.* ¶ 26. Plaintiff asserts that, "[u]nbeknownst to" those callers, RingCentral "monitor[ed] and analyz[ed] patient calls with its proprietary artificial intelligence algorithms in real-time," and later used call information "to train its AI models and develop its own products and services for other customers." *Id.* ¶¶ 23-27.

When it comes to her own experience, however, Plaintiff alleges only that when she "called a Heartland supported dental clinic" at various, unidentified times over "the last two years" to "inquire[] about making appointments to receive medical treatment," "Heartland allowed RingCentral to eavesdrop on the calls and analyze them using artificial intelligence." *Id.* ¶¶ 31-32. There is no allegation that Plaintiff in fact made an appointment or disclosed any medical information; that her calls were subject to any specific "feature" from RingCentral's "suite" of services, *id.* ¶ 13; or that RingCentral used any of her call information for product training or development.

Plaintiff nonetheless asserts that RingCentral violated the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), by intercepting her communications. *Id.* ¶¶ 43-44. She also states that RingCentral performed that interception "for the purposes of violating 42 U.S.C. § 1320d-6 of the Health Insurance Portability and Accountability Act ('HIPAA')." Compl. ¶ 48. Despite never alleging that she made a dental appointment, disclosed medical information, or was subject to any particular RingCentral feature, Plaintiff asserts that she would adequately represent a class of "[a]ll U.S. residents who made or received a phone call to/from Heartland Dental and/or a Heartland Dental-managed clinic that was processed by RingCentral." *Id.* ¶ 35.

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed.

R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is not facially plausible unless it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[L]abels and conclusions, and a formulaic recitation of the elements" of claims will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must take all the well-pled factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

A motion to dismiss based on a facial challenge to subject matter jurisdiction under Rule 12(b)(1)—*i.e.*, a challenge that "argues that the plaintiff has not sufficiently alleged a basis of subject matter jurisdiction"—"appl[ies] the same analysis." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citation omitted). That is, it "first identifies the well-pleaded factual allegations by discarding the pleadings that are no more than conclusions," and then asks "whether the remaining well-pleaded factual allegations plausibly" show that the plaintiff has met the requirements for the Court's subject matter jurisdiction. *Id.*

**IV.   ARGUMENT**

    **A.   <u>Plaintiff's Complaint Must Be Dismissed for Lack of Standing Because She Has Failed to Plead Facts Showing that She Suffered Any Harm.</u>**

The irreducible minimum of Article III standing is that the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial ruling." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020). At the most fundamental level, that means that a plaintiff "lack[s] . . . standing" unless he "*himself . . . personally* suffered an actual injury." *Id.* Whether the defendant's conduct might have injured someone else—even someone else who is in many ways

4

similar to Plaintiff—thus "does not matter for the standing inquiry, which instead asks whether the plaintiff *in this case* has shown concrete and particularized harm." *Zuniga v. Asset Recovery Sols.*, No. 17-cv-05119, 2018 WL 1519162, at *3 (N.D. Ill. Mar. 28, 2018).

Here, Plaintiff fails to plead facts showing that she *herself* suffered any injury. Plaintiff's theory is that dental patients are harmed when "[u]nbeknownst to" them, RingCentral "monitor[s] and analyz[es] patient calls with its proprietary artificial intelligence algorithms in real-time." Compl. ¶ 23; *see also, e.g.*, *id*. ¶¶ 24-27. Specifically, she asserts that the harm arises because patients "are contacting their local dental office seeking medical treatment or inquiring about a past dental procedure or payment related to their dental treatments," while RingCentral uses that information "to train its AI models and develop its own products and services." *Id*. ¶¶ 26-27. But nearly every one of the Complaint's allegations is worded in generalities like the ones just shown— describing what (Plaintiff thinks) happens when RingCentral's services are applied to calls placed by "patient[s] *like* Plaintiff," *e.g.*, *id*. ¶ 24, rather than alleging facts about Plaintiff's own experience. Because Article III is satisfied only by well-pled factual allegations showing that Plaintiff herself suffered harm, those kinds of vague generalities are insufficient to allow her suit to proceed. *See, e.g.*, *Zuniga*, 2018 WL 1519162, at *3.

What is more, when the Complaint does finally plead "facts specific to Plaintiff," it offers only four threadbare allegations, *see* Compl. ¶¶ 31-34—none of which purports to show Plaintiff herself experienced the harms targeted by her claim. Rather, those allegations simply state that (at some unspecified times "within the last two years") Plaintiff "called a Heartland supported dental clinic" (she does not say which one) to "inquire[] about making appointments to receive medical treatment" (she does not state that she actually tried to make such an appointment), and that "Heartland allowed RingCentral to eavesdrop on the calls and analyze them using artificial

5

intelligence." *Id*. ¶¶ 31-32. Of course, those "naked assertions devoid of further factual enhancement" get Plaintiff nowhere on a motion to dismiss. *Iqbal*, 556 U.S. at 678. But more fundamentally, they betray numerous crucial gaps on their face. Most significantly, they assert only that "Heartland *allowed* RingCentral to eavesdrop on the calls," Compl. ¶ 32 (emphasis added)—not that any of Plaintiff's calls actually were subjected to RingCentral's services, or what services those supposedly were. These shortcomings are especially notable here, given Plaintiff's acknowledgment that RingCentral offers a variety of services, only some of which supposedly involve the artificial intelligence technology that she targets in her Complaint. *See, e.g.*, Compl. ¶¶ 11-13 (explaining that while RingCentral offers "a suit of features" involving "RingCentral AI," it also offers more basic features that simply "allow[] businesses to place and receive[] phone calls and messages using RingCentral instead of a traditional telephone provider"). Because all the harms described in the Complaint are premised on the actual application of RingCentral's artificial intelligence technologies—which Plaintiff does not allege occurred with respect to any of her phone calls—her suit must be dismissed for lack of standing.

  **B.** **Plaintiff's Complaint Must Be Dismissed for Failure to State a Claim Because She Has Failed to Plead Facts Showing a Violation of the Federal Wiretap Act.**

  Plaintiff's Complaint asserts only a single claim, under the Federal Wiretap Act, which makes it a crime to (1) without the "prior consent" of "one of the parties to the communication" (2) "intentionally intercept[] . . . [a] wire, oral or electronic communication," 18 U.S.C. § 2511. *See* Compl. ¶¶ 42-51. Here, rather than establishing each of those elements, Plaintiff's allegations affirmatively negate both.

    **1.** **Plaintiff's allegations make clear that RingCentral's actions were undertaken with consent.**

  The Federal Wiretap Act is a one-party consent statute, meaning that it permits actions undertaken with the consent of (or by) just a single party to the communication. The statute

6

directly states that so long as the defendant does not act "for the purpose of committing any criminal or tortious act," it "shall not be unlawful . . . for a person . . . to intercept a[n] . . . electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(d).

Here, Plaintiff's own allegations make clear that RingCentral had such consent. *First*, RingCentral itself was "a party to the communication[s]," as it did nothing more than "provide[] a tool" in the form of its software that "allow[ed] [Heartland] to record and analyze its own data in aid of [Heartland's own] business." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021); *see also, e.g.*, *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023) (explaining that where a technology provider is alleged to "harvest valuable data from . . . communications for the benefit of its clients," it is treated as if it were itself as party to the communication). As Plaintiff herself acknowledges, the entire point of RingCentral's services is to benefit "your [i.e., the customer's] business" by allowing them to "understand a person's emotional state" and to "focus on the conversation at hand, not taking notes." Compl. ¶¶ 14-16.

*Second*, even if RingCentral were not itself a party, it certainly had consent from one or more entities who were. Here, too, the Complaint makes this clear by alleging only that that "***Plaintiff*** did not give Defendants . . . consent" for their actions—not that any other party withheld its consent. *Id*. ¶ 34. And that makes sense: Plaintiff's entire theory, after all, is that Heartland Dental contracted with RingCentral specifically to provide (and that local dentist offices contracted with Heartland specifically to receive) the services that Plaintiff now challenges. *Id*. ¶¶ 18-19, 22. Accordingly, because Plaintiff does not—and cannot—plead that *all* parties to her calls did not consent to RingCentral's actions, her Federal Wiretap Claim fails at the outset.

Apparently realizing this problem, Plaintiff tries to plead around it by offering the

7

conclusory allegation that "RingCentral intercepted Plaintiff and the Class members' communications for the purposes of violating 42 U.S.C. § 1320d-6 of the Health Insurance Portability and Accountability Act ('HIPAA'),'" by "obtain[ing] 'individually identifiable health information'" of individuals like Plaintiff. Compl. ¶¶ 48-49; *see also* 18 U.S.C. § 2511(2)(d) (one party consent provision does not apply if defendant acts "for the purpose of committing any criminal or tortious act"). As courts across the country have recognized, however, that kind of "bare assertion" falls well short of the "well-pleaded facts" necessary to infer that RingCentral's "purpose was . . . to commit a crime or tort (or breach HIPAA)," as is required to defeat the Federal Wiretap Act's usual one-party consent rule. *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 24-cv-00382, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) ("assert[ion] . . . that Defendant intercepted [plaintiffs'] data for the *purpose* of breaching HIPAA" insufficient "[t]o avoid the ECPA's 'one party consent' provision"); *see also, e.g.*, *Williams v. TMC Health*, No. CV-23-00434, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (disregarding allegation that "Defendant intercepted the communications with the purpose of committing a tort or crime," including "42 U.S.C. § 1320d-6, HIPAA" as "conclusory and unsupported by any facts"). Plaintiff's shortcoming on this score is especially palpable in a case like this, where there is no obvious reason—and Plaintiff certainly offers none—for why RingCentral would possibly have motive to obtain private health information about random individuals with whom it has no relationship. (Plaintiff does not—and cannot—allege, for instance, that RingCentral is in the business of selling health information.)

In fact, what few factual allegations Plaintiff does offer affirmatively refute, rather than bolster, her outlandish suggestion that RingCentral developed and sold its telecommunications technologies because of a specific intent to violate HIPAA. Much of Plaintiff's Complaint, for

8

instance, focuses on a "sentiment analysis" tool, which Plaintiff says allows a company like Heartland to "'analyze[] tone and language to find patterns that indicate positive, neutral, or negative emotions'"—a quote that Plaintiff lifts directly from a page on RingCentral's website describing its "AI phone call" services. Compl. ¶¶ 16, 22 (quoting https://www.ringcentral.com/ai-phone-call.html). But even a cursory glance at that webpage reveals the absurdity in Plaintiff's suggestion that RingCentral developed that tool just so it could violate HIPAA. In fact, nothing on the website even so much as hints that the service is specifically targeted at medical offices or professionals specifically—much less with an aim towards violating their patients' HIPAA rights. To the contrary, the website advertises the services' operation to businesses generally (the vast, vast majority of which have nothing to do with HIPAA), illustrating its operation exclusively through examples far afield from the medical industry—such as by showing how it could aid businesses by helping them to keep track of key updates coming out of a call about an order for polo shirts, or to adopt a more professional tone in a team chat about marketing for an "upcoming product launch." Plaintiff's made-for-litigation assertion that RingCentral developed these services "with the purpose of" violating "42 U.S.C. § 1320d-6, HIPAA" by obtaining medical information from its customers' customers is thus not only facially implausible, but actively refuted by the very documents Plaintiff incorporates into her own Complaint.

In any event, even if Plaintiff had pled facts showing that RingCentral's purpose in developing and offering its services was (bizarrely) to violate HIPAA by "obtain[ing] 'individually identifiable health information,'" that would still be insufficient to avoid the Federal Wiretap Act's one-party consent provision. Compl. ¶ 49. As Judge Seeger recently explained, "the crime or tort" that a plaintiff seeks to use to avoid one-party consent "can't be the interception itself." *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025).

9

Rather, "'[t]o survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent of the intentional act of recording*," such as a subsequent disclosure of the intercepted information. *Id.* (quoting *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010)). Here, however, Plaintiff's theory of an intended HIPAA violation is based solely on RingCentral's supposed goal of "obtain[ing]" information," Compl. ¶ 49—i.e., the "intercept[ion]" itself, *Id.* ¶ 48—exactly what the caselaw says is insufficient to avoid one-party consent. *Stein*, 2025 WL 580556, at *4. For this reason, too, Plaintiff's attempt to sidestep the Federal Wiretap Act's one-party consent provision fails.

> **2. Plaintiff's allegations separately make clear that RingCentral is immune from liability because the services at issue here were offered in its "ordinary course of business."**

Plaintiff's claim independently fails because it impermissibly targets a service that RingCentral offers in its "ordinary course of business." As made clear by its text, the Federal Wiretap Act renders defendants "immune from claims alleging [1] interception by a 'device' . . . [2] used 'by a provider of wire and electronic communication service [3] in the ordinary course of business.'" *In re Google, Inc. Priv. Pol'y Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *10 (N.D. Cal. Dec. 3, 2013) (quoting 18 U.S.C. § 2510(5)(a)). As courts have explained, that is by design a "broad exception" to liability. *Id.* at *11. It is thus "not limited to [devices performing] actions necessary to providing [an] electronic communication service[,]" but rather extends to shield claims targeting any device used "to further [the defendant's] legitimate business purposes." *Id.* Indeed, it sweeps so far beyond the provision of core telecommunications services as to shield even Google's use of users' personally identifiable information for "targeted advertising" because that function fell "within its business' ordinary course." *Id.* at *10.

Here, Plaintiff's own allegations leave no doubt that RingCentral's services qualify for that

10

same immunity. First, Plaintiff herself alleges that the RingCentral "software" about which she complains constitutes the "device" that she says "is used to intercept … communications." Compl. ¶ 46. Second, Plaintiff makes clear that RingCentral is a "provider of wire and electronic communication service," § 2510(5)(a), as she alleges that it "is as an Internet-based telephone provider" with services akin to "a traditional telephone provider." Compl. ¶ 11. Finally, Plaintiff's allegations illustrate at some length that the "device" at issue here—i.e., RingCentral's software, including its artificial intelligence services—is used "in the ordinary course of [RingCentral's] business." § 2510(5)(a). Indeed, Plaintiff extensively quotes from RingCentral marketing materials advertising the very software services about which Plaintiff complains here, explaining that "RingCentral invites businesses to use its [RingCentral AI] product to 'power every interaction . . . across your calls, messages, meetings, and contact center.'" Compl. ¶ 12; *see also id.* ¶¶ 13-16. On Plaintiff's own allegations, these services are a key offering from RingCentral to its telecommunications customers, and thus obviously serve "to further [RingCentral's] legitimate business purposes." *In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499, at *11.

Accordingly, because Plaintiff's Federal Wiretap Act claim targets exactly the type of service that the statute shields from liability, it must be dismissed for failure to state a claim.

## V.   CONCLUSION

For the reasons above, RingCentral respectfully requests that the Court dismiss Plaintiff's Complaint without leave to amend.

Dated: September 12, 2025                    Respectfully Submitted,


*/s/ Michael M. Rosenberg*
Michael M. Rosenberg (Ill. Bar No. 6340654)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
353 N. Clark Street, Ste. 3600
Chicago, IL 60654
Tel: (312) 924-9800
mrosenberg@orrick.com

Jacob M. Heath (Pro Hac Vice)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 614-7400
jheath@orrick.om

Sarah B. Meehan (N.D. Ill. Bar No. 1658586)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202)339-8400
smeehan@orrick.com

*Attorneys for Defendant RingCentral, Inc.*

**CERTIFICATE OF SERVICE**

I, Michael M. Rosenberg, an attorney, do hereby certify that on September 12, 2025, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF RINGCENTRAL INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM** with the Clerk of Court for the U.S. District Court, Northern District of Illinois, using the Electronic Case Filing system of the Court. I hereby certify that CM/ECF will serve the document on the following parties:

Yaman Salahi
yaman@salahilaw.com
Nicole Cabañez
nicolec@salahilaw.com
**SALAHI PC**
505 Montgomery Street, 11th Floor
San Francisco, CA 94111
*Attorneys for Plaintiff*

Danielle M. Kays
dkays@fisherphillips.com
**Fisher & Phillips LLP**
10 S. Wacker Drive
Suite 3450
Chicago, IL 60606

Amber N. Peters
apeters@fisherphillips.com
**Fisher Phillips LLP**
227 W. Trade Street
Suite 2020
Charlotte, NC 28202
*Attorneys for Heartland Dental, LLC*

                                               */s/ Michael M. Rosenberg*
                                               Michael M. Rosenberg