**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**MEGAN LISOTA,** individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

**HEARTLAND DENTAL, LLC**, a Delaware limited liability company, and **RINGCENTRAL, INC.**, a Delaware Corporation,

*Defendants*.

Case No. 25-cv-7518-LCJ

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. SUMMARY OF ALLEGATIONS .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 5

A. Plaintiff has pled sufficient facts to plausibly establish Article III standing. .......... 5

B. Defendants have failed to conclusively establish that they obtained consent from any intended party to the communications at issue here. .......... 8

C. The crime/tort exception applies, rendering any party's consent to the interception irrelevant. .......... 11

D. The "ordinary course of business" exemption does not apply to either Defendant's conduct. .......... 15

E. Plaintiff has pled sufficient facts to state a claim against both Defendants for violations of the Federal Wiretap Act. .......... 20

V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Vill. of Winthrop Harbor*,
No. 93-cv-4642, 1998 WL 433772 (N.D. Ill. July 29, 1998) .......... 20

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) .......... 7

*Amati v. City of Woodstock*,
176 F.3d 952 (7th Cir. 1999) .......... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3, 4

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) .......... 4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 10

*Bryant v. Compass Group USA, Inc.*,
958 F.3d 617 (7th Cir. 2020) .......... 5

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 16, 17, 18, 20

*Cothron v. White Castle Sys., Inc.*,
20 F.4th 1156 (7th Cir. 2021) .......... 5

*Craftwood II, Inc. v. Generac Power Sys., Inc.*,
63 F.4th 1121 (7th Cir. 2023) .......... 10

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025) .......... 16

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 7

*Erickson v. Pardus*,
551 U.S. 89 (2007) .......... 4

*Fox v. Dakkota Integrated Systems, LLC*,
980 F.3d 1146 (7th Cir. 2020) .......... 5, 7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................................. 10

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
821 F.3d 935 (7th Cir. 2016) ........................................................................... 4, 19

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................. 16

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)................................................................................... 8

*In re Google Inc.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)........... 16, 17, 18

*In re Google Location History Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .................................................................. 10

*In re Google, Inc. Priv. Policy Litig.*,
No. 12-cv-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ............................. 17

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .................................................................... 15

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
No. 24-cv-2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) .................................. passim

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024).................................................................... 6

*Jandak v. Vill. of Brookfield*,
520 F. Supp. 815 (N.D. Ill. 1981) ................................................................... 19, 20

*K.L. v. Legacy Health*,
No. 23-cv-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) .................................... 13

*Kane v. University of Rochester*,
No. 23-cv-6207, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .............................. 12, 13

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .................................................................... 7

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ...................................................................... 8

*Kurowski v. Rush Sys. for Health*,
No. 22-cv-5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023).................................. 12, 14

*Kurowski v. Rush University System for Health*,
683 F. Supp. 3d 836 (ND Ill. 2023) ........................................................................ 14

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ................................................................... 10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)................................................................................................... 5

*Markakos v. Medicredit, Inc.*,
997 F.3d 778 (7th Cir. 2021) .................................................................................... 7

*Matera v. Google Inc.*,
No. 15-cv-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)............... 15, 16, 17

*Mazzorana v. Kelly*,
No. 21-cv-1899, 2022 WL 1211482 (N.D. Ill. Apr. 25, 2022)........................................ 22

*McGowan v. Hulick*,
612 F.3d 636 (7th. Cir. 2010) ................................................................................... 4

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 24-cv-003300, 2025 WL 103488 (C.D. Cal. Jan. 13, 2025)............................... 12, 14

*Rodriguez v. ByteDance*,
No. 23-cv-4953, 2025 WL 2495865 (N.D. Ill. Aug. 29, 2025) ....................................... 21

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) .................................................................................... 4

*Sloan v. Anker Innovations Ltd.*,
711 F. Supp. 3d 946 (N.D. Ill. 2024) ...................................................................... 9, 21

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).................................................................................................. 5

*Stein v. Edward-Elmhurst Health,*
No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ................................ 11, 13

*Strong v. LifeStance Health Grp. Inc.*,
No. 23-cv-00682, 2025 WL 317552 (D. Ariz. 2025) ............................................... 12, 13

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) .......... 4

*Thiele Kaolin, Inc. v. Wisconsin Central LTD*,
645 F. Supp. 3d 860 (N.D. Ill. 2022) .......... 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5

*W.W. v. Orlando Health, Inc.*,
No. 24-cv-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) .......... 13, 15

*Zak v. Bose Corp.*,
No. 17-cv-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) .......... 8, 9

**Statutes**

18 U.S.C. §2510 .......... 4, 15

18 U.S.C. §2511 .......... passim

42 U.S.C. § 1320d .......... 11

42 U.S.C. §1320d-6 .......... 11, 14

45 C.F.R. § 164.502 .......... 15

45 C.F.R. § 164.508 .......... 15

**Rules**

Fed. R. Civ. P. 10 .......... 19

Fed. R. Civ. P. 8(a)(2) .......... 3

## I. INTRODUCTION

This case addresses an emerging and serious threat to patient privacy rights: third-party artificial intelligence technologies that surreptitiously listen to patient phone calls with medical providers to conduct sophisticated voice and emotional sentiment analysis, create call transcripts, and use the contents of private patient calls to train and develop new AI products. The question presented in this case is whether a medical provider must first obtain patient consent before allowing a third-party artificial intelligence company to surreptitiously listen in on HIPAA-protected calls. The answer is yes.

Defendant Heartland Dental, LLC ("Heartland") is a dental support organization ("DSO") that assists dental practices with non-clinical tasks like billing, insurance, staffing, marketing, and telecommunications services. Compl. ¶ 1. Heartland enlists Defendant RingCentral, Inc. ("RingCentral") to provide telecommunications services to its dental practice clients. *Id.* ¶ 2. RingCentral's phone services are cloud-based, which not only enable medical providers to place calls and send messages, but also deploy artificial intelligence technology to analyze and summarize the *content* of HIPAA-protected patient calls. *Id.* ¶¶ 2-3, 14-6. The technology isn't deployed solely for the purpose of facilitating patient calls (that is, for the benefit of the dental providers), but also to train its RingCentral's AI models for its own economic benefit and for other clients. *Id.* ¶ 27.

Defendants raise several overlapping arguments in favor of dismissal, but they are all without merit. *First*, both Defendants argue that Plaintiff has not alleged facts sufficient to establish Article III standing, either because she did not detail the exact nature of the RingCentral services leveraged over her confidential phone calls, or because she did not allege that she suffered "actual harm" from the interception enabled by Heartland and conducted by RingCentral. These arguments misconstrue the standard for pleading facts sufficient to establish Article III standing at the motion to dismiss stage and ignore jurisprudence that unequivocally finds that invasions of privacy constitute concrete and particularized injury.

*Second*, Defendants both argue that the Federal Wiretap Act's status as a "one-party consent" statute should exonerate them because Defendants eavesdropped on patient calls with the consent of one party to the calls, namely, the dental practices that they support. However, they ignore recent caselaw in this circuit holding that violations of HIPAA constitute crimes and torts that trigger an exception to the one-party consent rule. Plaintiff benefits from the crime-tort exemption here by alleging that Defendants purposefully listened in to the content of HIPAA-protected calls.

*Third*, Defendants argue that the alleged interception occurred during the "ordinary course of business" and is thus exempt from the Federal Wiretap Act. Their reading of the "ordinary course of business" exemption is contrary to most cases interpreting the statute and leads to the absurd outcome of exempting conduct from the statute merely because Defendants' business model is built on violating the statute. Their reading enables the exemption to swallow the rule.

*Finally*, Plaintiff alleges sufficient facts to show that Heartland procured RingCentral's unlawful interception of patient calls.

## II. SUMMARY OF ALLEGATIONS

Defendant Heartland Dental, LLC is a dental support organization that provides services related to non-clinical aspects of running a practice, such as billing, insurance, staffing, and marketing. Compl. ¶ 1. Heartland is the largest DSO in the United States and has partnered up with over 1,700 dental practices and over 2,800 doctors nationwide. *Id.* ¶¶ 1, 17. Defendant RingCentral is an internet-based telephone provider that provides telecommunications services to businesses, enabling them to place calls and send and receive messages. *Id.* ¶ 11.

In addition to providing telecommunications services, RingCentral provides services that relate to routing calls and analyzing the *content* of those calls. Compl. ¶¶ 12-16. This second suite of services, identified in the complaint as RingCentral AI, is the basis of the conduct challenged in Plaintiff's complaint. RingCentral AI's features include the ability to recognize speech to identify callers and transcribe calls "in real time," generate summaries of patient calls

to allow RingCentral customers to "see AI-generated key phrases, next steps, and follow-up items," and to analyze "the emotional tone of a phone conversation." *Id.* ¶¶ 14-16.

Heartland uses a single phone system administered by RingCentral across its supported dental practices. Compl. ¶ 19. The system Heartland uses touts that it is an "AI-powered business communications platform." *Id.* In addition to this phone system, Heartland uses RingCentral's Contact Center product to analyze and route patient calls to its overflow call centers. *Id.* ¶ 20. That RingCentral product routes patient calls to a Heartland Patient Services Team in certain circumstances, but also listens to the content of *all incoming calls* to supported practices. *Id.* ¶¶ 20, 22. For example, Heartland Dental's Vice President of Patient Services Jeremy Stroud explained that RingCentral "*reviews all calls* that come into the supported practices*, in real-time*, and flags the ones from new patients where we might have missed an opportunity to set an appointment." *Id.* ¶ 22 (emphasis added). In those situations, the app flags numbers for follow-up with the goal of setting appointments with new patients. *Id.*

During the last two years, Plaintiff called her dental office several times, identifying herself by her name, and inquired about making appointments to receive medical treatment with her dental provider. Compl. ¶ 31. Plaintiff and the putative class members never consented to RingCentral's suite of artificial intelligence products being deployed to listen to their calls with dental providers. *Id.* ¶ 3, 29-30. Nonetheless, Heartland procured RingCentral to listen in and analyze the content of all incoming patient calls, and per RingCentral's Data Processing Addendum ("DPA") and privacy terms, allows RingCentral to use the data obtained from those HIPAA-protected calls to train and improve its services for the rest of its business customers. *Id.* ¶¶ 27-28.

## III. LEGAL STANDARD

At the pleading stage, a plaintiff need only make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation and quotation

omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp*, 550 U.S. at 570. At the pleading stage, courts must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *McGowan v. Hulick,* 612 F.3d 636, 638 (7th. Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007)). Because a plaintiff "ordinarily need not anticipate and attempt to plead around affirmative defenses," dismissal based on an affirmative defense is appropriate only when "the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). In reviewing a motion to dismiss based on a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court "appl[ies] the same analysis." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

The Federal Wiretap Act imposes liability on anyone that "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. §2511(1)(a). The Act defines the term "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4). To successfully state a claim under the Federal Wiretap Act, Plaintiff must plead sufficient facts to plausibly state that Defendants "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device." *In re TikTok, Inc. In-App Browser Priv. Litig.*, No. 24-cv-2110, 2024 WL 4367849, at *9 (N.D. Ill. Oct. 1, 2024) (citation omitted).

## IV. ARGUMENT

### A. Plaintiff has pled sufficient facts to plausibly establish Article III standing.

Plaintiff has alleged sufficient facts to demonstrate that she made HIPAA protected calls to her dental office which were intercepted by RingCentral AI, at Heartland's instruction, in a manner that violated the Federal Wiretap Act. These facts alone suffice to support Article III standing.

At the pleading stage, "standing requires allegations of a concrete and particularized injury in fact that is traceable to the defendant's conduct and redressable by judicial relief." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). It is undisputed that Plaintiff's claim for relief stems directly from Heartland and RingCentral's actions in eavesdropping on her phone calls to her dental office, and that these claims are redressable by this Court, through injunctive and monetary relief. Thus, Defendants only dispute whether Plaintiff has suffered an Article III injury in fact.

Concrete injuries encompass harms that are "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (cleaned up). However, while physical and monetary injuries may be the most obvious forms of concrete injuries, "[v]arious intangible harms can also be concrete." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). These include "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* The Seventh Circuit has held that the collection and retention of an individual's biometric data, without their consent, in violation of the Illinois Biometric Information Privacy Act ("BIPA"), constitute Article III injury because such a violation amounts to an invasion of an individual's "private domain, much like an act of trespass." *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020); *see also Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146, 1155 (7th Cir. 2020) (holding that the "unlawful *retention* of a person's biometric data [in violation of section 15(a) of BIPA] is as concrete and

particularized an injury as an unlawful *collection* of a person's biometric data" (emphasis in original)).

The same applies here. Like violations of BIPA, violations of the Federal Wiretap Act, particularly those involving unlawful access to or disclosure of protected medical information, constitute intrusions of an individual's private domain. Plaintiff alleges that she placed several phone calls to her dental office, which is a Heartland-supported practice. Compl. ¶ 31. She alleges that during these phone calls she "identified herself by her name and inquired about making appointments to receive medical treatment," that RingCentral contracted with Heartland Dental to provide both telecommunications services and services to support Heartland Dental's Patient Services Department, and that an executive in that department publicly proclaimed that RingCentral "reviews all calls that come into the supported practices, in real-time" to encourage prospective patients to make appointments. *Id.* ¶¶ 31, 22. The complaint also alleges that RingCentral's AI product also listens in on the content of those calls to improve its various products and services. *Id.* ¶ 28. Accepting these facts as true, Plaintiff has established that she suffered the injury of an intrusion on her private domain, akin to trespass.

Without citing any caselaw under the Federal Wiretap Act or similar statutes, both Defendants insinuate that Plaintiff must include details about the specific data intercepted by Defendants and how that data was ultimately used to establish Article III standing at this stage. Cases applying Article III standing analysis to the Federal Wiretap Act do not support such an exacting standard. Indeed, a court in this District recently declined to dismiss claims under the Federal Wiretap Act on standing grounds in the face of similar arguments, noting a "'chicken and the egg' problem that frequently arises in data-privacy cases, in which plaintiffs often lack knowledge of when or how their data is being used by the defendant's platform and can find out only through discovery." *In re TikTok, Inc.*, 2024 WL 4367849, at *5. Other courts have found similar allegations sufficient to support Article III standing at the pleading stage. *See e.g.*, *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1354, n.3 (S.D. Cal. 2024) (finding "more than general allegations that [plaintiffs'] personal data was intercepted" sufficient to find that

plaintiff's adequately pled Article III injury); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (noting "invasion of privacy can be a harm in and of itself"); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (holding violations of statutes that codify a substantive right to privacy confer Article III standing, noting that "privacy torts do not always require additional consequences to be actionable") (affirming dismissal on other grounds); *Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1153 (N.D. Cal. 2023) ("an invasion of privacy as a harm, particularly as analogous to that recognized in common law, is sufficient."). Likewise, here, Plaintiff alleged that she called her dental office for the purpose of making appointments and obtaining medical treatment. Compl. ¶ 31. Her calls were intercepted by RingCentral at Heartland's instruction, without her consent. *Id.* ¶¶ 32-34. These allegations are sufficient.

Heartland Dental finally suggests, while failing to cite to any privacy cases holding the contrary, that Plaintiff had to suffer a distinct, material harm other than the invasion of privacy to have Article III standing, likening this case to a violation of the notice requirements in the Fair Debt Collection Practices Act ("FDCPA"). Dkt. 25 at 7. Notice requirements are fundamentally different from invasions of privacy, though. The Seventh Circuit has narrowly carved out notice requirements under the FDCPA as an area of law that necessitates greater allegations of harm than the notice failure to establish standing, in part because incomplete notices do not constitute "actionable invasions of privacy" in the way that other statutory violations might. *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 781 (7th Cir. 2021) (distinguishing a notice violation under the FDCPA from the case of vexatious text messages, phone calls, and faxes that constitute a violation under the Telephone Consumer Protection Act, which the Seventh Circuit found had constituted an actionable invasion of privacy). Unlike a statutory notice requirement under the FDCPA, invasions of privacy relating to the disclosure of protected information have long been recognized by American courts, including the Seventh Circuit, as constituting concrete harm, even if intangible. *Bryant*, 958 F.3d at 627 (holding violation of BIPA conferred Article III standing); *Fox*, 980 F.3d at 1152-56 (same). A plaintiff bringing a wiretap claim, alleging that

her information was disclosed without her consent, suffers a concrete injury without the need to allege additional material, pecuniary harm from that disclosure.

### B. Defendants have failed to conclusively establish that they obtained consent from any intended party to the communications at issue here.

The Federal Wiretap Act is a "one party consent" statute, meaning the Act exempts a person who intercepted an electronic communication from liability "where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception . . ." 18 U.S.C. § 2511(2)(d). Thus, to qualify under this exemption, the Defendant must either be "a party to the communication" or they must establish that one of the parties to the communication gave prior consent to the interception at issue. *Id.* Defendants fail to establish that either circumstance applies here.

First, neither Heartland Dental nor RingCentral are a "party to the communication" at issue. Courts in this district have interpreted the term "party to the communication" to mean "one who takes part in the conversation," *Zak v. Bose Corp.*, No. 17-cv-02928, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) (citing *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015)), or the "intended recipient of the communication." *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023). "This inquiry is relatively simple for telephone calls, but becomes trickier for electronic communications, which may involve multiple simultaneous exchanges of information." *In re TikTok, Inc.*, 2024 WL 4367849, at *11 (citations omitted).

Plaintiff's claim of interception here is likewise simple. She does not, at any point, allege that she intended to communicate with Heartland Dental, or that she actually spoke with a representative from any of Heartland Dental's overflow call centers. She intended to call her dental provider, Tru Family Dental. Compl. ¶ 5. Nonetheless, Plaintiff alleges that her phone calls were intercepted by RingCentral, who was surreptitiously eavesdropping on the content of her calls with her dental provider, at Heartland's instruction. *Id.* ¶¶ 32-33.

Defendants' arguments to the contrary fail. Heartland argues that it was a "party" to the communications because it was "involved [in the communications] through a legitimate third-party arrangement" with the intended recipient, Tru Family Dental. Dkt. 25 at 8. However, neither of the two cases it cites support a finding that Heartland, as a service provider to Plaintiff's dental office, is a party to the communications that Plaintiff made to her dental provider. Indeed, both cases cited by Heartland involve plaintiffs whose claims were against website or application operators themselves, who employed technologies to track and utilize the plaintiffs' behavior on their own websites. *Zak*, 2019 WL 1437909, at *3 (challenged interception occurred through the plaintiff's admitted use of the defendant's app, rendering defendant a party to the communications); *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 957 (N.D. Ill. 2024) (the plaintiff alleged their use of defendant security camera's own app, with cloud-based recordings, involved an interception). In both cases, the plaintiffs understood they were communicating with the defendant through the defendants' websites or apps, and they were merely challenging the way that particular technologies were deployed on those websites. Here, Plaintiff believed that she was communicating with her dental office, not Heartland or RingCentral, who were neither announced nor intended parties to any of her calls. Indeed, the complaint includes no allegations that Heartland or RingCentral ever participated in those calls; it only alleges that RingCentral was a silent, surreptitious eavesdropper. Compl. ¶ 33. Heartland concedes the point. Dkt. 25 at 9 ("Plaintiff does not assert facts to support her claim that Heartland Dental actually participated in her calls."). If Heartland takes the position that it did not participate in the alleged intercepted calls, it should not be able to argue that it was also a party to the challenged communications between Plaintiff and her dental provider.

RingCentral's arguments hinge on Heartland's position as a party to the alleged communications, rendering its arguments even more tenuous than Heartland's. It also cites to two cases applying California state wiretapping law which are inapposite. Dkt. 24 at 7. Like the cases cited by Heartland, the cases cited by RingCentral concern defendants who are website or application operators themselves, not an unintended recipient of a phone call. *See Graham v.*

*Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (defendant's weight loss app, which plaintiffs used directly, utilized third-party to analyze consumer behavior on application); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1082 (C.D. Cal. 2023) (defendant's website operator used third-party to store transcripts of chat conversations with consumers). Importantly, both cases concern interceptions that were only one step removed from the intended party to the communication, with the plaintiff interacting with the defendant's websites or apps directly. As one of these cases aptly puts it, the primary inquiry is whether the "technology (or actor) behaves more akin to a tape recorder utilized by the party to the conversation or as an eavesdropper." *Licea,* 659 F. Supp. 3d at 1082. Here, Plaintiff alleges that she called Tru Family Dental, who disclosed the calls to Heartland, who disclosed them to RingCentral, who utilized them for purposes that had nothing to do with the purpose of Plaintiff's calls: making a medical appointment. Compl. ¶¶ 31-34. RingCentral listened in on the content of Plaintiff's phone calls for its own benefit. Compl. ¶¶ 22-28. In doing so, it acted more akin to a surreptitious eavesdropper than a recording device used for the sole benefit of the party to the communications, Tru Family Dental.

Second, even if Heartland consented to RingCentral's eavesdropping, that consent was not Heartland's to give and Heartland hasn't met its burden to demonstrate that Plaintiff or her dental provider provided such consent. *See In re TikTok, Inc.*, 2024 WL 4367849, at *8 (Consent is "an affirmative defense on which Defendants bear the burden of proof." (cleaned up)) (citing *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1126 (7th Cir. 2023)); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 933 (N.D. Cal. 2023) (placing the burden to establish consent under the Federal Wiretap Act on defendant). Defendants have not even attempted to establish that Plaintiff or her dental provider consented to the interception at issue here, nor could they, given the allegations in the complaint. And even if Defendants could establish that Plaintiffs' dental provider consented to Heartland's interception, that would not constitute consent to RingCentral's eavesdropping on Plaintiff's calls. *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 192 (N.D. Cal. 2019) ("Consent is not an all-or-nothing

proposition. A party may consent to the interception of only part of a communication or to the interception of only a subset of its communications." (quotations and citations omitted)). The scope of any valid consent to RingCentral's eavesdropping is necessarily a factual issue that can only be ascertained in discovery. Dismissal on this basis would thus be premature. *In re TikTok, Inc.*, 2024 WL 4367849, at *9 (declining to dismiss wiretap claim on the basis of a consent defense when the scope of consent was at issue).

**C. The crime/tort exception applies, rendering any party's consent to the interception irrelevant.**

Even if the Court finds that RingCentral or Heartland are parties to the alleged communication who provided consent, it should nonetheless decline to dismiss this action because the interception at issue here was "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). For this exception to the one-party consent rule to apply, the criminal or tortious conduct alleged must be an act that is independent of the intentional act of intercepting the communication. *See Stein v. Edward-Elmhurst Health,* No. 23-cv-14515, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025) (denying motion to dismiss Federal Wiretap Act claims based on the crime-tort exception, with HIPAA serving as the underlying predicate offense).

The Health Insurance Portability and Accountability Act ("HIPAA") imposes federal criminal liability on anyone who either obtains or discloses "individually identifiable health information" without authorization. 42 U.S.C. §1320d-6. The term "individually identifiable health information" is defined in the statute as any information that:

> (A) is created or received by a health care provider . . . and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and— (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320d(6).

Here, Plaintiff alleges that Heartland unlawfully and intentionally used RingCentral's software to intercept phone calls intended to be between Plaintiff and her medical provider, when

she "identified herself by her name and inquired about making appointments to receive medical treatment." Compl. ¶ 31. Plaintiff alleges that in undertaking this arrangement, Heartland disclosed Plaintiff's individually identifiable health information to RingCentral, and that RingCentral AI unlawfully obtained Plaintiff's individually identifiable health information and used it to train its artificial intelligence models to develop and improve its products and services. *Id.* ¶ 27.

The information provided by Plaintiff on her calls was received by her healthcare provider, related to the provision of her healthcare, and identified her by name. Compl. ¶ 31. These facts are sufficient to establish that the intercepted conversation constituted individually identifiable health information protected from disclosure by HIPAA, and have been sufficient to survive motions to dismiss under the crime/tort exception in other Federal Wiretap Act cases. See e.g., *Kurowski v. Rush Sys. for Health*, No. 22-cv-5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (allegations that physician's names, locations, and specialties of physicians were captured with a data tracking tool and shared to third parties violated HIPAA); *Kane v. University of Rochester*, No. 23-cv-6207, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (allegations that a technology captured and sold website user data on appointment booking and search terms to find providers constituted HIPAA violation for the purposes of the crime/tort exception); *R.S. v. Prime Healthcare Servs., Inc.*, No. 24-cv-003300, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025) (finding intentional interception of data concerning plaintiff's medical care sufficient to survive motion to dismiss); *Strong v. LifeStance Health Grp. Inc.*, No. 23-cv-00682, 2025 WL 317552, at *5 (D. Ariz. 2025) (same).

Disclosing, obtaining, and analyzing patient data, without patient consent, constitutes a criminal purpose separate from the act of intercepting the conversations at issue. In deciding whether an act is sufficiently independent from the act of interception, courts evaluate whether the crime or tort hinges on improper *use* of the intercepted communication, rather than the act of recording itself. *R.S.*, 2025 WL 103488, at *5 (intent to disclose data to third parties constituted an improper anticipated use of intercepted data, rendering the HIPAA violation within the

crime/tort exception to the one-party consent rule); *W.W. v. Orlando Health, Inc.*, No. 24-cv-1068-JSS-RMN, 2025 WL 722892, at *7 (M.D. Fla. Mar. 6, 2025) (same); *K.L. v. Legacy Health*, No. 23-cv-1886-SI, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) (same).

Here, Plaintiff alleges that at the time she called her dental office, Heartland and RingCentral intended for RingCentral to eavesdrop on her calls to her dentist's office and to use that data for the improper purpose of training its artificial intelligence-based technologies and services. Compl. ¶¶ 27-28, 47. In doing so, Heartland intentionally disclosed Plaintiff's protected health information, and RingCentral unlawfully obtained Plaintiff's protected information with the intention to retain and use it for its own benefit. Thus, the underlying HIPAA violation, disclosing and obtaining individually identifiable health information without consent, is separate from the mere act of recording or eavesdropping on patient calls.

Contrary to Defendants' arguments, Plaintiff does not need to allege that Defendants acted with the specific purpose of violating the law. "A party does not have to say, in effect, 'I want to commit a crime,' or 'today is a great day to commit a tort'" for the crime-tort exception to apply. *Stein*, 2025 WL 580556, at *5. The defendant in *Stein* likewise argued that they did not intend to violate HIPAA when it used software that shared patient information from its online platform with Facebook, arguing that it had financial or commercial, and not criminal, motivations. *Id.* at *5. The court reasoned that such commercial motivations did not remove the motivation to commit the actions underlying the criminal offense, as the "existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive." *Id*. at *6 ; *see also Kane*, 2024 WL 1178340, at *7-8 (finding purpose to commit act that would constitute HIPAA violation sufficient to meet purpose requirements under crime-tort exception); *Strong*, 2025 WL 317552, at *5 (declining to dismiss action when complaint alleged that a purpose to disclose protected health information constituted an interception "for the purpose of violating HIPAA").

Defendants' argument that some additional *disclosure* of individually identifiable health information is required to establish a HIPAA violation is incorrect.[1] Dkt. 25 at 9. For starters, committing a crime or tort is not a necessary condition to properly pleading the applicability of the crime-tort exception—pleading the *purpose* to commit a criminal or tortious act is. *R.S.*, 2025 WL 103488, at *4 ("the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." (citation omitted)). Second, HIPAA also provides for criminal liability if an entity "obtains" such information without consent. 42 U.S.C. §1320d-6(a)(2).

The argument that "obtaining" the protected information cannot be separated from the interception is incorrect. Dkt. 24 at 10. RingCentral eavesdropped on the content of Plaintiff's communications with her medical provider, thus intercepting the call. However, RingCentral continued to violate HIPAA, and indeed, intended to violate HIPAA, when it used the patient information in those calls for its own benefit, to train its own products and services for other customers. Compl. ¶¶ 27, 47. Likewise, Heartland procured RingCentral's interception when it allowed it to eavesdrop on all its calls, but it "disclosed" patient information to RingCentral when it allowed RingCentral to retain and use the contents of those calls for the purpose of improving its services. While the challenged conduct is related to the interception, the underlying nature of the violations are distinct from one another. The Department of Health and Human Services' regulations implementing HIPAA reinforce this theory of HIPAA liability for unauthorized *use* of individually identifiable health information, as they concern the scope of

[1] Heartland mistakenly cites to *Kurowski v. Rush University System for Health*, 683 F. Supp. 3d 836 (ND Ill. 2023) for the proposition that a plaintiff must allege disclosure of individually identifiable health information for HIPAA to serve as a predicate offense for the crime-tort exception. *See* dkt. 25 at 9. That case was not dismissed for lack of *disclosure* but was instead dismissed because the plaintiff did not explain how the data disclosed by defendants constituted *individually identifiable health information*, "rather than just metadata." 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023). Indeed, after Kurowski amended her complaint to more specifically identify and describe the information intercepted, the court found her allegations sufficient to "invoke the HIPAA exception-to-the-party-exception" and state a wiretap claim. *Kurowski*, 2023 WL 8544084, at *3.

both permitted *uses* and *disclosures* of protected information. *E.g.*, 45 C.F.R. § 164.502(b)(1) (requiring that covered entities subject to HIPAA only use or disclose protected information to the "minimum necessary to accomplish the intended purpose of the use, disclosure, or request"); 45 C.F.R. § 164.508 (enumerating uses and disclosures for which express patient consent is required, including for marketing purposes).

Finally, the underlying question of Defendants' motivations, the scope of their agreements between one another concerning HIPAA-protected information, and the ultimate uses and intended uses for the intercepted conversations "requires a factual undertaking," and is thus better assessed at a later stage in the litigation. *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023); *see also W.W.*, 2025 WL 722892, at *7 ("Application of the crime-tort exception appears more fit for resolution at summary judgment or trial than at the motion to dismiss stage").

### D. The "ordinary course of business" exemption does not apply to either Defendant's conduct.

Defendants also invoke the "ordinary course of business exemption" to the Federal Wiretap Act. The Act exempts from the definition of a covered "device":

> (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

18 U.S.C. §2510(5)(a). These exemptions are collectively known as the "ordinary course of business" exemption, which really confer two separate exemptions: the first relates to customers or subscribers of electronic communication services, the second refers to electronic communication service providers. *Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 8200619, at *7 (N.D. Cal. Aug. 12, 2016). Defendants invoke only the second exemption.

As a preliminary matter, these exemptions are affirmative defenses for which Defendants bear the burden of demonstrating they qualify. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025) ("There is a well-settled general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits. In particular, when a statute has exemptions laid apart from the prohibitions, and the exemptions expressly refer to the prohibited conduct as such, the exemptions ordinarily constitute affirmative defenses that are entirely the responsibility of the party raising them." (cleaned up)). A plaintiff is not obligated to plead around an affirmative defense because such a defense must be pleaded and proved by a defendant. *Id.* at 702. And "[d]efendants can bring a motion to dismiss on the basis of an affirmative defense only if that affirmative defense appears on the face of the complaint." *Thiele Kaolin, Inc. v. Wisconsin Central LTD*, 645 F. Supp. 3d 860, 863 (N.D. Ill. 2022) (citation and quotation omitted).

Defendants cannot establish the availability of the "ordinary course of business" exemption on the face of the complaint. To qualify for the exemption, a defendant must articulate "some nexus between the need to engage in the alleged interception and the [provider's] ultimate business, that is, the ability to provide the underlying service or good." *Matera*, 2016 WL 8200619, at *9 (citation omitted); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 844 (N.D. Cal. 2014); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *11 (N.D. Cal. Sept. 26, 2013) (hereinafter "*Gmail*"). For example, in both *Matera* and *Gmail* the court found that the alleged interception (scanning the content of an email message) was not necessary to the nature of the defendant's electronic communications business (providing an email platform to send and receive messages). *Matera*, 2016 WL 8200619, at *14; *Gmail*, 2013 WL 5423918, at *8, *9. Essentially, the court in those cases found that the ordinary course of business exemption only extended to interceptions that "facilitate[] the transmission of the communication at issue or [are] incidental to the transmission of such communication." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 818 (N.D. Cal. 2020) (declining to dismiss

Federal Wiretap Act case under ordinary course of business exemption when interception occurred due to a defect) (citing *Gmail*, 2013 WL 5423918, at *8).

Neither Defendant makes any attempt to show that the alleged interception here is necessary to, or merely incidental to, their business as a provider of telecommunications services, because they can't. The interception at issue here, including the use of AI-analysis and training, is entirely unnecessary to facilitate the making and receiving of calls or messages between dental practices and their patients. Instead, the interception relates to separate business objectives that are wholly unrelated to providing telecommunications services: the use of artificial intelligence to generate more appointments for supported practices, and to use the *content* of a vast array of customer calls to refine AI algorithms across RingCentral's various, distinct, products and services for other customers. Compl. ¶¶ 27-28, 47. This motivation does not fall within the ordinary course of providing telecommunications services. To exempt such conduct would require collapsing the distinction between these different products, services, and business objectives, and expanding an exemption that was only intended to cover a narrower subset of business activities that are necessary to providing communications services. *Matera*, 2016 WL 8200619, at *9; *Campbell*, 77 F. Supp. 3d at 844; *Gmail*, 2013 WL 5423918, at *10-11.

RingCentral cites one case for the proposition that the ordinary course of business exemption under 18 U.S.C. § 2510(5)(a)(ii) is entitled to a "broad" reading, which would exempt any activity which would fall within any articulable business objective. Dkt. 24 at 10 (citing *In re Google, Inc. Priv. Policy Litig.*, No. 12-cv-01382-PSG, 2013 WL 6248499, at *10 (N.D. Cal. Dec. 3, 2013) (hereinafter "*Google*")). However, *Google* is over a decade old, pre-dates the emergence of the technology challenged in this case, and is an outlier compared to more recent authority declining to apply such a broad reading to the exemption. *See, e.g.*, *Campbell*, 77 F. Supp. 3d at 844; *Matera*, 2016 WL 8200619, at *9 ("respectfully disagree[ing]" with the court in *Google*). Indeed, a court in this District recently described *Google* as an "outlier," and observed that "multiple courts have since rejected its reasoning on the grounds that allowing companies to claim any revenue-generating practice as part of their ordinary course of business would permit

electronic communication service providers to effectively exempt themselves from the Wiretap Act." *In re TikTok, Inc.*, 2024 WL 4367849, at *14 (quotations and citation omitted). Such a reading, far from settled law, would allow an electronic communications service provider to "adopt any revenue-generating practice and deem it 'ordinary' by its own subjective standard," and swallow the rule. *Campbell*, 77 F. Supp. 3d at 844.

Heartland also mislabels a different provision, 18 U.S.C. §2511(2)(a)(i) of the Federal Wiretap Act, as the source of the "ordinary business exemption." *See* Dkt. 25 at 10. However, that provision is an entirely different exemption that only provides a safe harbor for individual employees of telecommunications providers, not to the companies themselves. *In re TikTok, Inc.*, 2024 WL 4367849, at *13 (describing §2511(2)(a)(i) as a "related exception for any employee of a service provider who intercepts a communication"). The full text of that section reads:

> It shall not be unlawful under this chapter for *an operator of a switchboard*, or *an officer, employee, or agent of a provider of wire or electronic communication service*, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that *a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.*

18 U.S.C. § 2511(2)(a)(i) (emphasis added). Not only is this provision limited to the actions of individual employees, it affirmatively forbids service observing or random monitoring "except for mechanical or service quality control checks," implying that the wholesale observing of phone calls for their *content*, as Plaintiff alleges, is not permitted. Indeed, the *Gmail* case cited by Heartland makes this point explicitly. Dkt. 25 at 10; *Gmail*, 2013 WL 5423918, at *9 ("The statute explicitly limits the use of service observing or random monitoring by electronic communication service providers to mechanical and service quality control checks. Accordingly, the statutory scheme suggests that Congress did not intend to allow electronic communication

service providers unlimited leeway to engage in any interception that would benefit their business models, as Google contends." (citation omitted)).

Likewise, Heartland's reliance on the DPA and privacy policy should be unavailing.[2] It argues that the policies "confirm that even if RingCentral processed Plaintiff's information . . . it was solely to perform the contracted services for Heartland Dental and did so subject to strict self-imposed and legally compliant purpose limitations." Dkt. 25 at 10-11. This assertion is unsupported by any allegation in the complaint or judicially noticeable fact and is thus improper at this stage. *Hyson USA*, 821 F.3d at 939. In fact, this statement by Heartland is directly contradicted by factual allegations in the complaint that all calls to supported practices were intercepted and used for the purposes of soliciting prospective patients to make appointments. Compl. ¶ 22. In addition, Heartland fails to cite to any allegation in the complaint supporting the existence of a policy that limits the use of information to that covered by the "ordinary course of business" exemption. To the contrary, the DPA speaks about being allowed to use customer data to improve its "services" in broad strokes. Compl. ¶ 28. As alleged, these "services" include RingCentral's artificial intelligence services, even services that extend far beyond facilitating telephone connections, such as analyzing the content of phone calls for marketing purposes. *Id.* ¶ 22. Defendants are not entitled to an inference to the contrary at this stage.

Heartland's case citations are also easily distinguishable, if not irrelevant. For example, in *Jandak v. Vill. of Brookfield*, the court limited its analysis to the aspect of §2510(a)(ii) that addressed devices used "by an investigative or law enforcement officer in the ordinary course of his duties." 520 F. Supp. 815, 821 (N.D. Ill. 1981). The device at issue in that case was not an entire "telephone system," but a regularly recorded line used in a police station, that all officers

---

[2] Heartland includes a URL citation to RingCentral's Privacy Policy and Data Processing Addendum in footnotes of its brief, without attaching them as exhibits to a sworn declaration. Dkt. 25 at 3, n.2-3. Citing to URL versions of documents is not an appropriate procedure for requesting to incorporate a document by reference. Fed. R. Civ. P. 10(c) (requiring that a written copy of a document be attached as an exhibit to be considered as part of the pleading). Plaintiffs thus dispute the document's authenticity and relevance, as there is no accompanying statement that the policies at those links were in effect for the full duration of the period at issue here.

knew was recorded. *Id.* at 824. The narrow question before the court in that case was whether the "routine, nonsurreptitious, recording of a police investigative line" to intercept an officer's (improper) personal phone call constituted an interception. *Id.* at 825. Indeed, a later case in the same district found the *surreptitious* recording of phone calls to a police station did not qualify under this exemption. *Abbott v. Vill. of Winthrop Harbor*, No. 93-cv-4642, 1998 WL 433772, at *11 (N.D. Ill. July 29, 1998), (*rev'd on other grounds*, 205 F.3d 976 (7th Cir. 2000)). The surreptitious use of an emerging technology to analyze HIPAA protected phone calls is a far cry from the facts of *Jandak*. *Amati v. City of Woodstock* is similarly distinguishable. 176 F.3d 952, 954 (7th Cir. 1999) (concerning the routine recording of phone calls to police phone lines).

Finally, as discussed *supra*, Defendants' intent, purpose, and use of intercepted call data are all disputed, factual questions that are better resolved at a later stage in litigation, when all parties have had the benefit of discovery. *In re TikTok, Inc.*, 2024 WL 4367849, at *14 (finding it would be premature to dismiss action on the basis of ordinary course of business exemption when purpose of challenged data collection was in dispute); *Campbell*, 77 F. Supp. 3d at 845 (application of the ordinary course of business exception would require "a more complete evidentiary record").

**E. Plaintiff has pled sufficient facts to state a claim against both Defendants for violations of the Federal Wiretap Act.**

Finally, Heartland argues that there are no specific allegations in the complaint that allege that Heartland itself used any of RingCentral's contemporaneous transcription features, such that it could be accused of intercepting the calls "contemporaneously," likening its role in the complaint as "allowing" RingCentral's interception. Dkt. 25 at 11-12. In doing so, Heartland mischaracterizes Plaintiff's allegations. The Federal Wiretap Act prohibits individuals from "intercept[ing] . . . or procur[ing] any other person to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Plaintiff's allegations make clear that Heartland enlists RingCentral to provide a singular phone system to dental practices, and that the RingCentral call center products are used to support Heartland's overflow call centers and to

"review all calls" that come into supported practices for opportunities to make appointments "in real time." Compl. ¶¶ 19-23. The complaint also alleges that RingCentral's DPA requires its clients to allow it to use the consumer data to improve its products. *Id.* ¶ 28. Thus, Plaintiff's theory of liability is not reliant on whether Heartland contemporaneously intercepted Plaintiff's calls, but whether it procured RingCentral to eavesdrop on calls as they come into supported practices. *Id.* ¶ 44.

Heartland's position that it merely "allowed" RingCentral to eavesdrop on the conversations should also be of no avail, in part because allowing an unannounced third party to listen to the contents of a phone conversation constitutes "procuring" an eavesdropper or interception. Eavesdropping, and allowing someone to eavesdrop on a phone call, are prohibited under the Federal Wiretap Act. 18 U.S.C. § 2511(1). Heartland's reliance on *Sloan*, a case dismissing claims based on the one-party consent rule, is also inapposite, because as discussed *supra*, Heartland is not a party to the communications. 711 F. Supp. 3d at 957. Heartland's citations and reference to "allowing" RingCentral's eavesdropping are thus just mere reiterations of its arguments under the one-party consent rule, which fail.

The cases Heartland cites for the proposition that interception must have occurred contemporaneously with the communication are not relevant, because they all concern liability for those that intercepted communications themselves. For example, in *Rodriguez v. ByteDance* the complaint merely alleged that the technology employed by defendants' app had the *ability* to collect data when the app was not in use and made the leap that the ability to obtain messages meant that they had indeed been obtained. No. 23-cv-4953, 2025 WL 2495865, at *6 (N.D. Ill. Aug. 29, 2025). The court distinguished between access to user data and interception, because the plaintiffs in that case failed to explain how the interception occurred, whose communications were intercepted, or what was contained in those communications, only alleging that some undefined third parties had received access to "user data." *Id.* at 7; *Mazzorana v. Kelly*, on the other hand, concerned an individual that had obtained access to someone else's cloud account, and used that access to review old emails. No. 21-cv-1899, 2022 WL 1211482, at *2 (N.D. Ill.

Apr. 25, 2022). None of these cases concern Federal Wiretap Act liability for entities that procure another's interception.

## V. CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' Motions to Dismiss in their entirety.

Dated: October 10, 2025

Respectfully submitted,

By: */s/ Nicole Cabañez*

Yaman Salahi (SBN 288752)
yaman@salahilaw.com
Nicole Cabañez (*pro hac vice*)
nicolec@salahilaw.com
**SALAHI PC**
505 Montgomery St., 11th Floor
San Francisco, California 94111
Tel: (415) 236-2352

*Attorneys for Plaintiff*