IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

MEGAN LISOTA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HEARTLAND DENTAL, LLC, a Delaware corporation, and RINGCENTRAL, INC., a Delaware corporation,

Defendants.

Case No. 1:25-cv-7518

Honorable Lindsay C. Jenkins

**REPLY IN SUPPORT OF RINGCENTRAL, INC.'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiff's Complaint Must Be Dismissed for Lack of Standing Because She Has Failed to Plead Facts Showing that She Suffered Any Harm. ..... 1

B. Plaintiff's Complaint Must Be Dismissed for Failure to State a Claim Because She Has Failed to Plead Facts Showing a Violation of the Federal Wiretap Act ..... 4

1. Plaintiff's Allegations Make Clear that RingCentral's Actions Were Undertaken with Consent. ..... 4

2. Plaintiff's Allegations Separately Make Clear that RingCentral Is Immune from Liability Because the Services at Issue Here Were Offered in Its "Ordinary Course of Business." ..... 8

III. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................2

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023) ....................3

*Bryant v. Compass Grp. USA, Inc.*,
958 F.3d 617 (7th Cir. 2020) ....................3

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....................8

*Diya Ahmad & N. Comms., Inc. v. Starr Indem. & Liab. Co.*,
No. 23-cv-04631, 2024 WL 182279 (N.D. Ill. Jan. 17, 2024)....................2, 5

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................6

*Fox v. Dakkota Integrated Sys., LLC*,
980 F.3d 1146 (7th Cir. 2020) ....................3

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....................6

*In re Google, Inc. Priv. Pol'y Litig*,
No. C-12-01382, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013)....................8, 9, 10

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................5

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
982 F.3d 1060 (7th Cir. 2020) ....................1

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................5, 6

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023) ....................3

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................3

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 24-cv-00330, 2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 7

*Rodriguez v. Google LLC*,
No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 6

*Russo v. Microsoft Corp.*,
No. 20-CV-04818, 2021 WL 2688850 (N.D. Cal. June 30, 2021) .......... 9

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .......... 5, 6

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
MDL No. 2948-A, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) .......... 8

*Williams v. TMC Health*,
No. CV-23-00434, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .......... 6

**Statutes & Other Authorities**

18 U.S.C. § 2511 .......... 5

42 U.S.C. § 1320d-6 .......... 6

45 C.F.R. § 160.103 .......... 7

Rule 12(b)(6) .......... 8

## I. INTRODUCTION

RingCentral's Motion to Dismiss ("Mot.") detailed a marked oddity—and fatal defect—at the heart of Plaintiff's Complaint: At nearly every turn, the Complaint conspicuously shies away from offering allegations about Plaintiff herself, opting instead to speak in vague generalities, such as about the experience of "patient[s] ***like*** Plaintiff." *See, e.g.*, Compl. ¶ 24 (emphasis added). Plaintiff's Opposition ("Opp.") reveals why: because Plaintiff's goal has never been to provide a short plain statement of the facts of her own experience, but instead to lift allegations and arguments from other cases that have survived motions to dismiss—indifferent to whether they truly apply here or not—in hopes of achieving a similar result here. *See* Opp. 12. But Plaintiff's haste to copy-and-paste her way past a motion to dismiss has caused her to overlook the actual allegations and arguments at issue here—which make this case critically unlike the others she tries to mimic. As a result, her responses fail to fit the reasons for dismissal that RingCentral offered, and thus serve only to underscore why her lawsuit should not be allowed to proceed. Plaintiff's Complaint should be dismissed.

## II. ARGUMENT

### A. Plaintiff's Complaint Must Be Dismissed for Lack of Standing Because She Has Failed to Plead Facts Showing that She Suffered Any Harm.

Plaintiff does not dispute that to establish Article III standing for her claims against RingCentral, she must plead facts showing (among other things) that she *herself* suffered a cognizable injury that is fairly traceable to some act or omission on RingCentral's part. *See Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020). Nor does she dispute that this requirement renders irrelevant all of the (many) allegations that she makes regarding RingCentral's services generally, or injuries allegedly suffered by unidentified others. *See, e.g.*, Compl. ¶ 24 (allegations regarding experience of "patient[s] ***like*** Plaintiff" (emphasis added)).

Instead, Plaintiff insists that she "has established that she [has] suffered" such an injury at RingCentral's hands, Opp. 6 (citing Compl. ¶¶ 22, 28, 31)—pointing back to the same "naked assertions devoid of further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that RingCentral already disposed of in its opening brief (at 6). In regurgitating those same insufficient allegations, however, Plaintiff entirely fails to respond to RingCentral's argument—and thus concedes, *Diya Ahmad & N. Comms., Inc. v. Starr Indem. & Liab. Co.*, No. 23-cv-04631, 2024 WL 182279, at *3 (N.D. Ill. Jan. 17, 2024) ("Plaintiffs … concede [defendant's] arguments by failing to respond to them")—that her claim of injury fails at the threshold because she alleges only that "Heartland ***allowed*** RingCentral to eavesdrop on the calls," Compl. ¶ 32 (emphasis added), not that RingCentral actually ***did***.[1] For this reason alone, Plaintiff fails to show that she suffered any injury—much less one fairly traceable to RingCentral.

In any event, even if Plaintiff had alleged that RingCentral's services actually operated on her specific calls, Plaintiff still does not show that she suffered any constitutionally cognizable injury fairly traceable to RingCentral. Plaintiff does not dispute that she fails to allege "details about the specific data intercepted" or "how that data was ultimately used." Opp. 6. Instead—largely relying on out-of-context language from various cases within the Ninth Circuit—she simply insists that pleading such facts is not necessary "to establish Article III standing at this stage," because all she needs to allege is that "[h]er calls were intercepted by RingCentral at

---

[1] While Plaintiff's Opposition says that she "alleges that RingCentral's AI product also listens in on the content of [her] calls to improve its various products and services," Opp. 6 (citing Compl. ¶ 28), Paragraph 28 says nothing of the sort. Indeed, it does not discuss Plaintiff's calls at all. Instead, it merely quotes RingCentral's Data Processing Addendum, which imposes various limits on how RingCentral may process data. Compl. ¶ 28. Plaintiff employs a similar sleight of hand with her assertion that a Heartland "executive . . . publicly proclaimed that RingCentral 'reviews all calls that come into the supported practices, in real-time.'" Opp. 6 (quoting Compl. ¶¶ 31-32). While she suggests that this statement shows that Plaintiff herself "suffered the injury of an intrusion on her private domain," it, in fact, does nothing of the sort—among other reasons, Plaintiff does not attempt to identify when that statement was made (or, indeed, when her communications were) and so cannot show that it has anything to do with the calls at issue here.

Heartland's instruction, without her consent" in violation of the Wiretap Act. Opp. 6-7. But the Ninth Circuit itself has recently said otherwise, explaining that there is no "per se rule" of standing just because a plaintiff alleges a violation of a "privacy statutes," and that a plaintiff fails to sufficiently plead Article III injury in fact where she does not supply facts showing that the "individual circumstances giving rise to the [her] alleged injuries" would have given rise to a cognizable claim at common law. *Popa v. Microsoft Corp.*, 153 F.4th 784, 794 (9th Cir. 2025). The Seventh Circuit has done the same, explaining that a plaintiff cannot "generically analogize[] [an] alleged injury to a tortious invasion of privacy," but must instead show that her particular claim of injury satisfies the elements of one of the "four distinct torts" through which privacy was protected at common law—"intrusion upon seclusion, appropriation of another person's name or likeness, publicity given to another person's private life, and publicity that places one in a false light." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023); *see also Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 979 (7th Cir. 2023) (disclosure of drivers' license numbers did not constitute Article III injury because it did not reflect "the sort of potentially embarrassing or intimate details" covered by the common-law privacy torts).[2] Because Plaintiff does not do so here—indeed, does not even identify the "specific" information that she supposedly shared with her dental office (and in turn to Heartland and RingCentral)—she fails to show that she suffered a cognizable harm that was traceable to RingCentral, so her claim against RingCentral must be

[2] Plaintiff only underscores the deficiency of her own allegations on this score with her observation that "[t]he Seventh Circuit has held that the collection and retention of an individual's biometric data, without their consent, in violation of the Illinois Biometric Information Privacy Act ("BIPA"), constitute Article III injury." Opp. 5. In stark contrast to Plaintiff here, the plaintiffs in each of the Seventh Circuit cases on which she relies specified what information, exactly, the defendant supposedly collected without consent. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 619 (7th Cir. 2020), *cited at* Opp. 5 ("fingerprints"); *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149 (7th Cir. 2020), *cited at* Opp. 5 ("scan[s] [of] their hands"). Accordingly, those plaintiffs—unlike Plaintiff here—alleged facts sufficient to show how the collection at issue was sufficiently private that its nonconsensual collection would be analogous to the kind of conduct actionable in a privacy tort at common law.

dismissed for lack of standing.

### B. Plaintiff's Complaint Must Be Dismissed for Failure to State a Claim Because She Has Failed to Plead Facts Showing a Violation of the Federal Wiretap Act.

#### 1. Plaintiff's Allegations Make Clear that RingCentral's Actions Were Undertaken with Consent.

Plaintiff does not—and cannot—dispute that the Federal Wiretap Act is a one-party consent statute, meaning that if any party to the communication consented to the operation of RingCentral's services, that is sufficient to immunize RingCentral from liability (unless it acted with a criminal or tortious purpose). Instead, she devotes several pages to insisting that "neither Heartland Dental nor RingCentral are a 'party to the communication' at issue." Opp. 8-11. But as RingCentral already explained—in a discussion that Plaintiff simply ignores—Plaintiff's contention is entirely irrelevant because she concedes that "her dental office" was a party to the communications at issue, Opp. 9, and her dental office "contracted with Heartland," who in turn "contracted with RingCentral," "specifically to receive[] the services that Plaintiff now challenges." Mot. 7; *see also* Opp. 10 ("Plaintiff alleges that she called Tru Family Dental, who disclosed the calls to Heartland, who disclosed them to RingCentral"). Said otherwise, regardless of whether RingCentral was itself *also* a party,[3] it is indisputable that Plaintiff's dental office was. And because her dental office consented to the operation of RingCentral's services by entering

[3] In addition to being irrelevant, Plaintiff argument that RingCentral was not itself a party to the communications is also incorrect. As Plaintiff acknowledges, the "primary inquiry" in determining whether a technology provider like RingCentral is a party to a communication "is whether the 'technology (or actor) behaves more akin to a tape recorder utilized by the party to the conversation or as an eavesdropper.'" Opp. 10 (quoting *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1082 (C.D. Cal. 2023)). That in turn (as explained by the very case that Plaintiff cites) depends on whether there are "facts to suggest independent use of the allegedly collected data" that is not "for the benefit of its clients." *Id.* at 1083. Here, Plaintiff pleads no such facts. While her Opposition asserts that "RingCentral listened in on the content of Plaintiff's phone calls for its own benefit," Opp. 10 (citing Compl. ¶¶ 22-28), the paragraphs of the Complaint that she points to say exactly the opposite, alleging that RingCentral "listens to and analyzes patient calls ***on Heartland's behalf***" and "to train its AI models and develop its own products and services ***for other customers***." Compl. ¶ 27 (emphasis added).

into a contract with the specific purpose of procuring them, that is sufficient to satisfy the Wiretap Act's one-party consent requirement. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) (explaining that a party can "consent[]" to a technology provider's "receipt of the information" by "configur[ing]" their own technology infrastructure to provide them with that information).

Plaintiff fares no better with her fallback argument that one party's consent is not enough to immunize RingCentral here because RingCentral supposedly acted with the purpose of violating HIPAA. *See* Opp. 11-15. Indeed, Plaintiff does not appear to respond at all to RingCentral's argument—and thus, through her silence concedes, *Diya Ahmad*, 2024 WL 182279, at *3—that her scant allegations on this score are too conclusory to survive a motion to dismiss. *Compare* Mot. 7-9, *with* Opp. 11-15. The closest she comes is her (baffling) assertion that, to invoke the crime-tort exception, "Plaintiff does not need to allege that Defendants acted with the specific purpose of violating the law." Opp. 13. But the text of the statute—which requires Plaintiff to plead facts showing RingCentral acted "for the purpose of committing [a] criminal or tortious act," 18 U.S.C. § 2511(2)(d)—says exactly the opposite. And the case law does not say otherwise. Indeed, as illustrated by the quotes in her own brief, Plaintiff has—at best—mustered cases holding that "the 'existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive.'" Opp. 13 (quoting *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025)). (As *Stein* itself recognizes, however, its view of the law is at odds with courts across the country. 2025 WL 580556, at *5.[4]) But even on its own terms, that still requires what Plaintiff has failed to plead

[4] *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts in this district have found that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously."); *Katz-Lacabe v. Oracle Am. Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) ("Plaintiffs' attempt to invoke the crime-tort

here—i.e., "a criminal or tortious motivation." Said otherwise, even if it were not fatal to Plaintiff's claim that RingCentral's "primary motivation was to make money"—and, again, courts routinely hold that this alone is sufficient to defeat the crime-tort exception, *see, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797; *see also supra* n. 4—Plaintiff would still need to allege well-pled facts showing that RingCentral acted with the purpose of committing a tortious or criminal act.

The best Plaintiff offers on that score is her threadbare assertion that RingCentral acted with intent to "obtain[] individually identifiable health information." Compl. ¶ 49; *see also* Opp. 14. But even if that conclusory allegation could be considered, *but see Williams v. TMC Health*, No. CV-23-00434, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024) (disregarding allegation that "Defendant intercepted the communications with the purpose of committing a tort or crime," including "42 U.S.C. § 1320d-6, HIPAA" as "conclusory and unsupported by any facts"), Plaintiff does not dispute that it still would be insufficient to invoke the crime-tort exception, in light of the case law's clear holding that "'[t]o survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is ***independent of the intentional act of recording***," such as a subsequent disclosure of the intercepted information. *Stein*, 2025 WL 580556, at *4 (quoting *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010)).

---

exception, requiring them to plead sufficient facts to show that 'the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously,' does not apply to a case such as this, where Defendant's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'"); *Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("[T]he tort or crime exception cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money."); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001) ("DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites.").

Instead, Plaintiff tries to circumvent this problem by asserting that RingCentral separately "intended to violate HIPAA[] when it ***used*** the patient information . . . for its own benefit." Opp. 14; *see also* Opp. 12 (quoting from various cases finding an intent to violate HIPAA based on a subsequent *disclosure* of data, despite Plaintiff not alleging that RingCentral disclosed Plaintiff's data here). As an initial matter, though, this theory is directly contradicted by Plaintiff's own Complaint, whose only theory of the crime-tort exemption was that RingCentral intended to violate HIPAA by "obtain[ing]" her medical information. Compl. ¶ 49. But just as important, Plaintiff's newly minted theory also fails to show a criminal or tortious purpose: As Plaintiff herself acknowledges, only "covered entities subject to HIPAA" face restrictions on their "use" of protected information. Opp. 15 (citing 45 C.F.R. § 164.502(b)(1)). Plaintiff, however, does not even attempt to plead facts showing that RingCentral is a "covered entity." Nor could she, as "[c]overed entity means": (1) a "health plan"; (2) a "health care clearinghouse"; or (3) a "health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter"—none of which comes anywhere close to describing RingCentral. 45 C.F.R. § 160.103.[5] Accordingly, even if RingCentral had acted for the purpose of *using* Plaintiff's medical information, that would still not show an intent to undertake an act that would violate HIPAA—as (on Plaintiff's own telling) HIPAA imposes no prohibition on RingCentral doing exactly that. Even on Plaintiff's own theory, then, she has failed to plead facts invoking the Wiretap Act's crime-tort exemption to the one-party consent rule.

---

[5] This same problem also plagues Plaintiff's original theory, as HIPAA prohibits only "a 'covered entity,' including healthcare providers" from knowingly obtaining individually identifiable health information, *R.S. v. Prime Healthcare Servs., Inc.*, No. 24-cv-00330, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025), and Plaintiff has not even attempted to show that RingCentral is a covered entity.

### 2. Plaintiff's Allegations Separately Make Clear that RingCentral Is Immune from Liability Because the Services at Issue Here Were Offered in Its "Ordinary Course of Business."

Plaintiff does not (and cannot) dispute that under the ordinary course of business exemption, RingCentral is "immune from claims alleging [1] interception by a 'device' . . . [2] used 'by a provider of wire and electronic communication service [3] in the ordinary course of business.'" *In re Google, Inc. Priv. Pol'y Litig.* ("*In re Google*"), No. C-12-01382, 2013 WL 6248499, at *10 (N.D. Cal. Dec. 3, 2013) (quoting 18 U.S.C. § 2510(5)(a)). Nor does she dispute that the first and second elements of that "ordinary course of business" exemption are satisfied here. Instead, she disputes only whether the RingCentral services at issue here were truly offered within the ordinary course of its business.[6]

On this score, though, Plaintiff does not dispute that under *In re Google*—which held that the exemption extends to any service used "to further [the defendant's] legitimate business purposes"—RingCentral's services clearly qualify. 2013 WL 6248499, at *11; Opp. 17. Instead, she contends that this Court should disregard the rule of *In re Google*—which she maligns as an "outlier"—in favor of a supposedly stricter rule that requires "some nexus between the need to engage in the alleged interception and the [provider's] ultimate business, that is, the ability to provide the underlying service or good." Opp. 16-17 (quoting *Matera v. Google Inc.*, No. 15-CV-04062, 2016 WL 8200619, at *9 (N.D. Cal. Aug. 12, 2016)). But Plaintiff's attempt to avoid *In re Google* fails twice over.

[6] Plaintiff wrongly suggests that the ordinary course of business exemption is categorically unavailable at the motion to dismiss stage because it is an "affirmative defense." Opp. 16. But courts—including those cited in Plaintiff's brief—consistently hold otherwise. *See In re Google*, 2013 WL 6248499, at *10 (dismissing under Rule 12(b)(6) because the "complaint fails to allege any interception … that falls outside the scope of this broad immunity"); *see also, e.g., Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 841 (N.D. Cal. 2014) (considering ordinary course of business exemption on Rule 12(b)(6) motion); *In re TikTok, Inc. In-App Browser Priv. Litig.*, MDL No. 2948-A, 2024 WL 4367849, at *14 (N.D. Ill. Oct. 1, 2024) (similar).

*First*, Plaintiff is wrong to characterize *In re Google* as a mere outlier decision. In fact, multiple "appellate courts . . . agree[] that the 'ordinary course of business' exception is not limited to actions necessary to providing the electronic communication services" but instead extends to actions taken for "other business reasons." 2013 WL 6248499, at *11 (citing *Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 505 (2d Cir. 2005); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1250 (10th Cir. 2012)). And that makes sense: It would have been simple for Congress to limit the "exemption to only the provision of electronic communications services itself, or some such narrower scope" if that is what Congress had intended. *In re Google*, 2013 WL 6248499, at *10. But instead "Congress specifically chose the broader term 'business' that covers more far-ranging activity," and then "teamed the term 'business' with the terms 'ordinary course,' suggesting an interest in protecting a provider's customary and routine business practices." *Id.* As Plaintiff does not dispute that the services at issue here fall within RingCentral's "customary and routine business practices," under that straightforward logic, they plainly fall within the exemption's bounds.

*Second*, even under Plaintiff's proposed test—which she frames alternatively as requiring a "nexus" between the interception and the "ultimate business," or as requiring that the interception "facilitate[]" or be "incidental to the transmission," Opp. 16—RingCentral's alleged activities still easily qualify. When "the challenged conduct relates to features of" a company's service, the operation of such features is "necessarily 'incident[al]' to provision of that service" and thus protected by the exemption. *Russo v. Microsoft Corp.*, No. 20-CV-04818, 2021 WL 2688850, at *5 (N.D. Cal. June 30, 2021). This means, for example, that a plaintiff cannot sue Microsoft on grounds that its Cortana or Advanced Threat Protection products violate the Wiretap Act by collecting user data, because those features are "part of," and hence incident to, Microsoft's broader "Office 365" service. *Id.* So, too, here: Plaintiff herself alleges the challenged services

form a key part of RingCentral's broader telecommunications offering, *see* Compl. ¶¶ 12-16, and so they are necessarily incidental to that service, and thus , covered by the ordinary course of business exemption, even under Plaintiff's preferred test.

As a result, Plaintiff's arguments about the operative legal standard are of no moment. Whether evaluated under the broadly accepted rule of *In re Google*, or the supposedly narrower formulation Plaintiff offers, the features challenged here are part of RingCentral's "ordinary course of business," and thus cannot form the basis of a claim under the Federal Wiretap Act.

## III. CONCLUSION

For the reasons above, RingCentral respectfully requests that the Court dismiss Plaintiff's Complaint without leave to amend.

Dated: October 31, 2025

Respectfully Submitted,

*/s/ Michael M. Rosenberg*

Michael M. Rosenberg (Ill. Bar No. 6340654)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
353 N. Clark Street, Ste. 3600
Chicago, IL 60654
Tel: (312) 924-9800
mrosenberg@orrick.com

Jacob M. Heath (Pro Hac Vice)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 614-7400
jheath@orrick.om

Sarah B. Meehan (N.D. Ill. Bar. No. 1658586)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202)339-8400
smeehan@orrick.com

*Attorneys for Defendant RingCentral, Inc.*

## CERTIFICATE OF SERVICE

I, Michael M. Rosenberg, an attorney, do hereby certify that on October 31, 2025, I electronically filed the foregoing **REPLY IN SUPPORT OF RINGCENTRAL INC.'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM** with the Clerk of Court for the U.S. District Court, Northern District of Illinois, using the Electronic Case Filing system of the Court. I hereby certify that CM/ECF will serve the document on the following parties:

Yaman Salahi
yaman@salahilaw.com
Nicole Cabañez
nicolec@salahilaw.com
**SALAHI PC**
505 Montgomery Street, 11th Floor
San Francisco, CA 94111
*Attorneys for Plaintiff*

Danielle M. Kays
dkays@fisherphillips.com
**Fisher & Phillips LLP**
10 S. Wacker Drive
Suite 3450
Chicago, IL 60606

Amber N. Peters
apeters@fisherphillips.com
**Fisher Phillips LLP**
227 W. Trade Street
Suite 2020
Charlotte, NC 28202
*Attorneys for Heartland Dental, LLC*

*/s/ Michael M. Rosenberg*
Michael M. Rosenberg