**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**MEGAN LISOTA,** individually and on behalf of all others similarly situated

*Plaintiff*,

v.

**HEARTLAND DENTAL, LLC**, a Delaware limited liability company, and **RINGCENTRAL, INC.**, a Delaware corporation,

*Defendants*.

Case No. 25-cv-7518

**PLAINTIFF'S OPPOSITION TO HEARTLAND DENTAL'S MOTION TO DISMISS**

## TABLE OF CONTENTS


**I. INTRODUCTION** ....................1

**II. SUMMARY OF ALLEGATIONS** ....................1

**III. LEGAL STANDARD** ....................3

**IV. ARGUMENT** ....................3

**A. Plaintiff Adequately Pleads Article III Standing** .................... 3

**B. Plaintiff Adequately Pleads a Claim Under the Federal Wiretap Act** .................... 5

1. The Party Exception Does Not Exonerate Heartland .................... 5

a) Heartland Dental was not a party .................... 5

b) Heartland's status as a "service provider" is irrelevant. .................... 6

c) Heartland does not establish that Tru Family Dental consented. .................... 7

d) Even if Heartland is a party, the crime/tort exception applies .................... 8

2. The Ordinary Course of Business Exemption Does Not Apply .................... 10

3. Heartland Used RingCentral's Interception For Its Own Benefit .................... 12

**C. Plaintiff's Intrusion Upon Seclusion Claim is Properly Pled** .................... 13

**V. CONCLUSION** ....................15

# TABLE OF AUTHORITIES

## Cases

*Am. Kitchen Delights, Inc. v. Signature Foods, LLC*,
No. 16-cv-08701, 2018 WL 1394032 (N.D. Ill. Mar. 20, 2018) ........................................ 8

*Amati v. City of Woodstock*,
176 F.3d 952 (7th Cir. 1999) ........................................................................................ 12

*Andersen Consulting LLP v. UOP*,
991 F. Supp. 1041 (N.D. Ill. 1998) ................................................................................ 11

*Babnik v. Village of Antioch*,
No. 21-cv-22, 2026 WL 686538 (N.D. Ill. Mar. 11, 2026) ............................................. 14

*Barthel v. Illinois Central Gulf R.R. Co.*,
384 N.E.2d 323 (Ill. 1978) .............................................................................................. 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 3

*Bonilla v. Ancestry.com Ops. Inc.*,
574 F. Supp. 3d 582 (N.D. Ill. 2021) ....................................................................... 13, 14

*Brooks v. Ross*,
578 F.3d 574, 580 (7th Cir. 2009) ................................................................................... 3

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ............................................................................. 7

*Browning v. AT & T Corp.*,
682 F. Supp. 2d 832 (N.D. Ill. 2009) ............................................................................. 14

*Brunett v. Convergent Outsourcing, Inc.*,
982 F.3d 1067 (7th Cir. 2020) ......................................................................................... 4

*Burrow v. Sybaris Clubs Int'l, Inc.*,
No. 13-cv-2342, 2013 WL 5967333 (N.D. Ill. Nov. 8, 2013) .................................. 13, 14

*Busse v. Motorola, Inc.*,
351 Ill. App. 3d 67 (2004) ............................................................................................. 13

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........................................................................................ 7

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .................................................................. 10, 12

*Carpenter v. Phillips*,
419 F. App'x 658 (7th Cir. 2011) ........................................................................... 14

*Crowley v. Cybersource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ................................................................... 11

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025)................................................................................................. 10

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ................................................................ 13, 14

*Erickson v. Pardus*,
551 U.S. 89 (2007)..................................................................................................... 3

*Flores v. Aon Corp.*,
242 N.E. 3d 340 (Ill. App. 2023) ............................................................................. 13

*Gadelhak v. AT&T Servs., Inc.*,
950 F.3d 458 (7th Cir. 2020) ..................................................................................... 4

*Hackman v. Dickerson Realtors, Inc.*,
595 F. Supp. 2d 875 (N.D. Ill. 2009) ......................................................................... 6

*Heffron v. Green Tree Servicing, LLC*,
No. 15-cv-0996, 2016 WL 47915 (N.D. Ill. Jan. 5, 2016)........................................ 15

*Helena Agri-Enters. LLC v. Lee*,
No. 18-cv-02685, 2019 WL 13217376 (S.D. Ind. May 13, 2019)............................... 6

*In re Google Assist. Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................... 10

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)........................................................................................ 5

*In re Google Inc. Gmail Litig.*,
No. 13-md-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013).......................... 10

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)......................................................................... 9

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ........ 11

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
No. 24-cv-2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ........ 4, 5, 7, 12

*Jandak v. Vill. of Brookfield*,
520 F. Supp. 815 (N.D. Ill. 1981) ........ 12

*Juenger v. Deaconess Health Sys.*, Inc.,
No. 24-cv-2332, 2025 WL 2780221 (S.D. Ill. Sept. 30, 2025) ........ 9, 14

*Kane v. Univ. of Rochester*,
No. 23-cv-6027, 2024 WL 1178340 (W.D.N.Y. 2024) ........ 9

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ........ 4, 9

*Kurowski v. Rush Sys. for Health*,
No. 22-cv-5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ........ 9

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
982 F.3d 1060 (7th Cir. 2020) ........ 4

*Lovgren v. Citizens First Nat'l Bank of Princeton*,
126 Ill.2d 411 (1989) ........ 13

*Matera v. Google Inc.*,
No. 15-cv-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........ 10

*McGowan v. Hulick*,
612 F.3d 636 (7th Cir. 2010) ........ 3

*McGreal v. AT & T Corp.*,
892 F. Supp. 2d 996 (N.D. Ill. 2012) ........ 15

*Minter v. AAA Cook Cnty. Consolidation, Inc.*,
No. 02-cv-8698, 2004 WL 1630781 (N.D. Ill. July 19, 2004) ........ 15

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023) ........ 4

*Persinger v. Sw. Credit Sys., L.P.*,
20 F.4th 1184 (7th Cir. 2021) ........ 4, 5

*Pierre v. Midland Credit Mgmt., Inc.*,
29 F.4th 934 (7th Cir. 2022) ........................................................................................ 4

*Pucillo v. Nat'l Credit Sys., Inc.*,
66 F.4th 634 (7th Cir. 2025) ........................................................................................ 4

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 24-cv-00330, 2025 WL 103488 (C.D. Cal. Jan. 13, 2025)........................................ 9

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ............................................................... 3, 4, 13, 14

*Rucker v. Moventas, Inc.*,
No. 16-cv-11169, 2017 WL 11717042 (N.D. Ill. Aug. 18, 2017) .................................. 13

*Shea v. Winnebago Cnty. Sheriff's Off.*,
No. 12-cv-50201, 2014 WL 4449605 (N.D. Ill. Sept. 10, 2014)..................................... 15

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ........................................................................................ 3

*Sloan v. Anker Innovations Ltd*.,
711 F. Supp. 3d 946 (N.D. Ill. 2024) ............................................................................. 7

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ..................................... 12

*Spiegel v. McClintic,*
No. 16-cv-9357, 2017 WL 4283727 (N.D. Ill. 2017) ...................................................... 14

*Stein v. Edward-Elmhurst Health*,
No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .......................................... 8

*Strong v. LifeStance Health Grp. Inc.*,
No. 23-cv-00682, 2025 WL 317552 (D. Ariz. 2025) ....................................................... 9

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ........................................................................................ 6

*Swierkiewicz v. Sorema*,
N.A., 534 U.S. 506 (2002) .............................................................................................. 3

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ........................................................................................ 13

*Vega v. Chi. Park Dist.*,
958 F. Supp. 2d 943 (N.D. Ill. 2013) .................................................................... 13

*Vukadinovich v. Posner*,
No. 22-cv-118, 2023 WL 4931648 (N.D. Ind. June 21, 2023) ......................................... 6

*W.W. v. Orlando Health, Inc.*,
No. 24-cv-1068, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ......................................... 10

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
12 F.4th 665 (7th Cir. 2021) .................................................................................. 4

*Zak v. Bose Corp.*,
No. 17-cv-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ................................... 5, 6

**Statutes**

18 U.S.C. § 2510 .......................................................................................... 10, 11

18 U.S.C. § 2511 .......................................................................................... 5, 8, 12

42 U.S.C. §1320d .............................................................................................. 8

45 C.F.R. § 164.502 .......................................................................................... 8

45 C.F.R. § 164.508 .......................................................................................... 8

**Rules**

Fed. R. Civ. P. 8 .............................................................................................. 3

**Treatises**

Restatement (Second) of Torts § 652B ................................................................ 13

# I. INTRODUCTION

As artificial intelligence technologies have advanced, many companies have rushed to integrate them into preexisting products or services, eager to replace human employees and cut service costs. Heartland Dental ("Heartland") is an example of such a company. Heartland offers administrative support to dental practices, including customer service, marketing, and sales. In pursuit of thicker profit margins, it installed a suite of artificial intelligence tools onto its phone system that act as surreptitious communications and sales consultants. These tools, supplied by Defendant RingCentral, listen to phone calls between patients and their dental offices in real-time, analyze the sentiment of the participants, provide live feedback, summaries, and transcriptions, and listen for opportunities for Heartland to make more appointments. All the while, RingCentral AI uses the content of these conversations, and the data derived from them, to train and develop its technologies for its other clients, taking confidential medical information and using it for its own benefit. Heartland thus procured RingCentral to wiretap private conversations between patients and their medical providers without obtaining patient consent, violating federal and state law.

Heartland's arguments for dismissal fail. First, Heartland attempts to relitigate Article III standing without articulating any basis for this Court to reconsider its holding. Second, it claims to be a party to the patient calls, relying on strained factual inferences to which it is not entitled at this stage. Third, it attempts to avail itself of the Federal Wiretap Act's ordinary course of business exemption, but fails because, in this context, that exemption is limited to conduct related to the facilitation of a phone call. Finally, it incorrectly argues that Plaintiff's allegations are insufficiently specific to state a claim for intrusion upon seclusion.

# II. SUMMARY OF ALLEGATIONS

Heartland is a dental support organization ("DSO") that provides non-clinical services to dental practices, like billing, staffing, and marketing. FAC ¶ 1. Heartland is the largest DSO in the United States and has partnered with over 1,700 dental practices and over 2,800 doctors

nationwide. *Id.* ¶¶ 1, 29. These dental practices retain independence over clinical work, maintain their own business name, and are separately owned and managed. *Id*. ¶ 29.

As a DSO, Heartland coordinates the provision of telephone services to supported practices, providing a single phone system across all practices administered by RingCentral. FAC ¶ 30. Unlike traditional telephone companies that simply facilitate phone calls, RingCentral partners with Heartland to listen to and analyze the *content* of patient calls. *Id.* ¶ 33. This AI-powered service, identified in the First Amended Complaint as RingCentral AI, analyzes patient phone calls, including identifying the speakers in the conversation, "AI-generated key phrases, next steps, and follow-up items," and the "emotional tone of a phone conversation." *Id.* ¶¶ 20-27. RingCentral's AI product thus functions not as a phone service, but rather a communications consultant and a secretary, transcribing and analyzing the conversation for business ends that are unrelated to the facilitation of telephone calls.

RingCentral's AI product performs these tasks for all calls that go into Heartland-supported dental practices. As Heartland Vice President of Patient Services boasts, RingCentral "reviews *all calls* that come into the supported practices, *in real-time* . . . ." FAC ¶ 33 (emphasis added). These analyses are not simply sent back to the dental practices; they are transmitted back to *Heartland* for Heartland to use, too. For example, when RingCentral AI determines that a new patient call ends before an appointment is made, it notifies Heartland so that it can call the patient to solicit an appointment. *Id*. Heartland thus utilizes RingCentral AI's analyses and predictions to generate appointments, not merely to connect callers. *Id*.

Plaintiff Megan Lisota alleges that she called her dental office several times, identified herself by her name, and inquired about making appointments to receive medical treatment with her dental provider. FAC ¶ 42. She and the proposed class were never informed that RingCentral AI would listen to their calls with their dental providers. *Id*. ¶ 44. Nonetheless, Heartland enlisted RingCentral to listen to and analyze the content of incoming patient calls, and allowed RingCentral to use the data obtained from those HIPAA-protected calls to train and improve its services for the rest of its business customers. *Id*. ¶¶ 58-59.

## III. LEGAL STANDARD

At the pleading stage, a plaintiff need only make a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up and citation omitted). This rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 550 U.S. at 570. At the pleading stage, courts must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *McGowan v. Hulick,* 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus,* 551 U.S. 89, 90 (2007)). In reviewing a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court "appl[ies] the same analysis." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citation omitted).

## IV. ARGUMENT

### A. <u>Plaintiff Adequately Pleads Article III Standing</u>

This Court has already ruled that Plaintiff's allegations establish Article III injury because her Federal Wiretap Act claim bears a "close relationship" to a harm historically recognized in the common law tort of intrusion upon seclusion. Dkt. 38 at 5. Heartland offers nothing new to disturb the Court's prior ruling. As the Court recognized, the essential elements of intrusion upon seclusion are an intrusion into another's private affairs that would be highly offensive to a reasonable person, with eavesdropping by wiretap being an "example." *Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 850 (N.D. Ill. 2024). Plaintiff alleges that Heartland, by embedding RingCentral AI's products into its phone system, wiretapped conversations between patients and their dental providers and violated her medical privacy. FAC ¶¶ 30, 33. Her statutory violation thus bears a "close relationship" to a harm recognized under the common

law. *See* Dkt. 38 at 5; *In re TikTok, Inc. In-App Browser Priv. Litig.*, No. 24-cv-2110, 2024 WL 4367849, at *4 n.4 (N.D. Ill. Oct. 1, 2024); *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021) (unauthorized inquiry into consumer's "propensity-to-pay" was analogous to inspection of "one's mail, wallet, or bank account").

Arguing otherwise, Heartland mischaracterizes Plaintiff's complaint as only alleging that her calls "may" have been intercepted. But Plaintiff explicitly alleges that RingCentral listens to *all incoming calls*, including Plaintiff's. *Compare* Dkt. 42 at 5, *with* ¶¶ 33, 42-43. Heartland also faults Plaintiff for not alleging any disclosure of her information to third parties, but an intrusion upon seclusion claim only requires unauthorized *prying* into private affairs, not subsequent *disclosure*. Dkt. 42 at 14 (*citing Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023)). Heartland also wrongly implies that Article III standing exists only where a plaintiff's analogous common law claim also survives, but this approach has been rejected by the Seventh Circuit. *Persinger*, 20 F.4th at 1192 ("[w]hether [a plaintiff] would prevail in a lawsuit for common law invasion of privacy is irrelevant" to the standing analysis).[1]

Heartland's cited authorities are inapposite. They either do not address Article III standing,[2] or concern informational injuries like debt collection letters rather than privacy intrusions.[3] This case does not allege an informational injury, it alleges a privacy intrusion and therefore supports standing. Compare *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 639 (7th Cir. 2025) (deceptive debt collector notices did not resemble common law privacy torts) with

---

[1] *See also Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020).

[2] *Kurowski*, 683 F. Supp. 3d at 848-49 (analyzing merits of intrusion upon seclusion claim, not standing); *Ramirez*, 729 F. Supp. 3d at 850 (actual damages required under Illinois Consumer Fraud and Deceptive Business Practices Act).

[3] *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634 (7th Cir. 2025); *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022) (untimely collection letter); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021) (debt collector failed to send required notices or identify itself as debt collector in calls); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020) (misleading statement); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1063 (7th Cir. 2020) (insulting statements).

*Persinger*, 20 F.4th at 1192 (unauthorized inquiry into a consumer's "propensity-to-pay" score analogous to intrusion upon seclusion). The Court should stand by its initial holding.

### B. Plaintiff Adequately Pleads a Claim Under the Federal Wiretap Act

The Federal Wiretap Act imposes liability on anyone that "procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a), or "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through [an] interception . . . in violation of this subsection," 18 U.S.C. § 2511(1)(d). Heartland does not contest whether Plaintiff states a prima facie violation of the Wiretap Act on these grounds. Instead, it invokes the party exception, the ordinary course of business exception, and failure to allege contemporaneous interception.

#### 1. The Party Exception Does Not Exonerate Heartland

To qualify for the party exception, Heartland must demonstrate that it is either "a party to the communication" or that "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). It cannot make either showing.

a) Heartland Dental was not a party.

The term "party to the communication" refers to "one who takes part in the conversation," *Zak v. Bose Corp.*, No. 17-cv-02928, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) (citing *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015)). "This inquiry is relatively simple for telephone calls[.]" *In re TikTok*, 2024 WL 4367849, at *11 (citations omitted).

Plaintiff's claim of interception here is simple. She does not allege that she called Heartland or spoke with a Heartland representative. She called her provider, Tru Family Dental. FAC. ¶ 42. Her phone calls were intercepted by RingCentral's AI software, which was secretly eavesdropping on the content of her calls with her provider, at Heartland's instruction. *Id.* ¶¶ 32-34. Heartland acknowledges that "Plaintiff does not allege that Heartland Dental provided dental care, acted as the dental provider, or otherwise stood in the shoes of the supported professional

corporation." Dkt. 42 at 7. Thus, the amended complaint plausibly alleges that Heartland was not a party to Plaintiff's phone calls.

Heartland argues that this Court's prior order required her to plead facts that would *exclude* the possibility that her call had been answered by Heartland's overflow call centers. In fact, the Court held that "[i]t is therefore plausible that when Lisota called, either Tru Family Dental staff *or* Heartland answered." Dkt. 38 at 8. Because either inference is plausible and inferences must, at this stage, be drawn in Plaintiff's favor, Plaintiff adequately alleges that it was in fact Tru Family Dental staff who answered her calls.[4] Moreover, because Heartland operators do not disclose that they are not Tru Family Dental personnel, there is no way for a plaintiff to determine the true identity of their interlocutors before discovery. Because Heartland cannot establish that it was in fact a party to the calls at this stage, it must establish that Tru Family Dental Consented to the interception, which it cannot.

b) Heartland's status as a "service provider" is irrelevant.

Heartland asserts, without analysis, that if Tru Family Dental answered Plaintiff's calls, Heartland could nonetheless "participate directly in Plaintiff's calls with Tru Family Dental through the provision of communications services." Yet, the two cases cited by Heartland do not address when a third-party service provider, especially one whose role is confined to intermediary procurement, becomes an extension of a party. Both cases concern website or application operators who employed technologies to track and utilize the plaintiffs' data on their own platforms.[5] Heartland's argument implies that by purchasing communications services on a

---

[4] *See*, *e.g.*, *Helena Agri-Enters. LLC v. Lee*, No. 18-cv-02685, 2019 WL 13217376, at *4 (S.D. Ind. May 13, 2019) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." (quotation omitted)); *Vukadinovich v. Posner*, No. 22-cv-118, 2023 WL 4931648, at *27 (N.D. Ind. June 21, 2023); *accord Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("'Plausibility' . . . does not imply that the district court should decide whose version to believe[.]"); *Hackman v. Dickerson Realtors, Inc.*, 595 F. Supp. 2d 875, 879 (N.D. Ill. 2009) (plaintiffs not required "to exclude every plausible interpretation of the facts that [do] not support their theory of liability").

[5] *See Zak*, 2019 WL 1437909, at *3 (challenged communications related to plaintiff's admitted use of the defendant's app); *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 956-57 (N.D.

client's behalf, it becomes an extension of that party whenever that party makes phone calls. That theory is unsupported by caselaw. The only somewhat analogous in-circuit case Plaintiff could locate rejects Heartland's theory. *In re TikTok*, 2024 WL 4367849, at *13. When someone places a phone call, neither the phone company nor the person on the phone bill is automatically deemed a party to the conversation. These questions are better decided on a factual record.

c) <u>Heartland does not establish that Tru Family Dental consented</u>.

As the Court correctly noted, "if Tru Family Dental's local staff answered [Plaintiff's phone call], the 'party exception' argument holds only if Tru Family Dental consented (or if Heartland was otherwise a party to the call)." Dkt. 38 at 9. Consent is "an affirmative defense on which Defendants bear the burden of proof." *In re TikTok*, 2024 WL 4367849, at *8 (cleaned up); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 933 (N.D. Cal. 2023) (placing the burden to establish consent under the Federal Wiretap Act on defendant). To prevail, Heartland must "show that a 'reasonable user viewing [Tru Family Dental's] disclosures would . . . have concluded that they unambiguously disclosed the data collection at issue." *In re TikTok*, 2024 WL 4367849, at *8 (quoting *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147-48 (9th Cir. 2024)). "And at the motion-to-dismiss stage, [Heartland] must do so using only the Complaint's allegations and any documents attached, incorporated by reference, or properly subject to judicial notice." *Id.* Heartland has failed to make any arguments, much less conclusively establish, that Plaintiff or her dental office provided consent either to Heartland's bugging of the phone system with RingCentral's AI technology, or to Heartland's later use of the technology's analyses to solicit new patients. Therefore, this argument fails.

What's more, consent is necessarily fact-intensive, rendering the decision better suited on a factual record. *In re TikTok, Inc.*, 2024 WL 4367849, at *9; *see also* Dkt. 38 at 9 (holding the scope of any valid consent may touch on matters of agency and authority). Yet the existence and

Ill. 2024) ("communication" was between defendant's security camera product and defendant's cloud-based recordings).

scope of such an agency relationship is itself a fact-intensive inquiry that courts generally prefer to assess at a later stage. *See*, *e.g.*, *Am. Kitchen Delights, Inc. v. Signature Foods, LLC*, No. 16-cv-08701, 2018 WL 1394032, at *4 (N.D. Ill. Mar. 20, 2018) (holding that requiring plaintiffs to allege agency relationship is not reasonable at pleading stage).

d) Even if Heartland is a party, the crime/tort exception applies.

Even if the Court finds Heartland was a party to the communication who provided consent, it should decline to dismiss this action because the interception at issue here was "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). At the pleading stage, Plaintiff need only plausibly allege that Heartland, in permitting RingCentral to use patient data to train its AI models, procured an interception which was done with "the purpose of committing an act that is a crime or a tort." *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025). Plaintiff need not allege that Heartland's *procurement* of the interception was done for that purpose; only the *interception* need be in service of a crime or tort.

The Health Insurance Portability and Accountability Act ("HIPAA") imposes criminal liability on anyone who either obtains or discloses "individually identifiable health information" ("IIHI") without authorization. 42 U.S.C. §1320d-6. IIHI is defined as information that:

> (A) is created or received by a health care provider . . . and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and— (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320d(6). The Department of Health and Human Services' regulations implementing HIPAA also specify permitted *uses* and *disclosures* of protected information. *E.g.,* 45 C.F.R. § 164.502(b)(1) (requiring that covered entities subject to HIPAA only use or disclose protected information to the "minimum necessary to accomplish the intended purpose of the use, disclosure, or request"); 45 C.F.R. § 164.508 (enumerating uses and disclosures for which express patient consent is required, including for marketing purposes). Misusing protected information, or using it for an unauthorized purpose, thus violates HIPAA. Violation of statutes

and regulations also constitute prima facie evidence of negligence under Illinois law. *See Barthel v. Illinois Central Gulf R.R. Co.*, 384 N.E.2d 323 (Ill. 1978); *Juenger v. Deaconess Health Sys.*, Inc., No. 24-cv-2332, 2025 WL 2780221, at *4 (S.D. Ill. Sept. 30, 2025) (finding HIPAA violation may inform standard of care for common law negligence claims).

Plaintiff alleges that she "identified herself by her name and inquired about making appointments to receive medical treatment." FAC ¶ 42. Heartland deployed RingCentral's software to intercept her phone calls with her medical provider. *Id.* ¶ 56. Heartland intended to disclose her phone calls' contents to RingCentral, did not obtain consent to do so, and RingCentral unlawfully obtained her IIHI with intent to use it to train its AI technology. *Id.* ¶ 59. Heartland knew that Plaintiff and the Class Members' calls were analyzed for other purposes, including to generate more appointments for supported practices with new patients. *Id.* ¶ 33. These facts establish that the intercepted conversation constituted IIHI protected from disclosure. Such allegations suffice to defeat a motion to dismiss under the crime/tort exception.[6]

Heartland's argument that additional disclosure of IIHI (beyond its disclosure to RingCentral) is required to establish a HIPAA violation is incorrect.[7] Dkt. 42 at 9. Heartland understood that RingCentral would analyze the content of patient-provider calls, and that RingCentral would use its analyses to assist Heartland with its sales efforts. FAC ¶ 33. These actions violate HIPAA and its implementing regulations. Moreover, the underlying question of Heartland's motivations, the scope of its agreements with Tru Family Dental and RingCentral, and the scope of any patient consent "requires a factual undertaking," and is thus better assessed at a later stage. *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023); *see*

---

[6] *See*, *e.g.*, *Kurowski v. Rush Sys. for Health*, No. 22-cv-5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (capture of physician names, locations, and specialties violated HIPAA); *Kane v. Univ. of Rochester*, No. 23-cv-6027, 2024 WL 1178340, at *7 (W.D.N.Y. 2024); *R.S. v. Prime Healthcare Servs., Inc.*, No. 24-cv-00330, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025); *Strong v. LifeStance Health Grp. Inc.*, No. 23-cv-00682, 2025 WL 317552, at *5 (D. Ariz. 2025).

[7] Heartland's cited case, *Kurowski*, was dismissed because the information did not constitute IIHI, not for lack of disclosure. 683 F. Supp. 3d at 843-44.

*also W.W. v. Orlando Health, Inc.*, No. 24-cv-1068, 2025 WL 722892, at *7 (M.D. Fla. Mar. 6, 2025) ("Application of the crime-tort exception appears more fit for resolution at summary judgment or trial[.]").

**2. The Ordinary Course of Business Exemption Does Not Apply**

Heartland also invokes the "ordinary course of business exemption" to the Federal Wiretap Act found in 18 U.S.C. § 2510(5)(a)(ii). It bears the burden of demonstrating its applicability. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025). Plaintiff addresses this exemption at length in her opposition to RingCentral's motion to dismiss. *See* Dkt. 44 at 4-9. For the same reasons that the exemption does not apply to RingCentral, it does not apply to Heartland Dental. Namely, the statute makes clear that the exemption only applies to acts undertaken in the "ordinary course" of the business of providing the electronic communication service, i.e., "provid[ing] to users . . . the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(5)(a)(ii) & 2510(15)[8]; *see also* Dkt. 44 at 5-9. It does *not* mean that a business is immune for any activities it undertakes to intercept a communication, so long as it also operates an electronic communications service. *See Matera v. Google Inc.*, No. 15-cv-04062, 2016 WL 8200619, at *13 (N.D. Cal. Aug. 12, 2016) (agreeing the exemption does not apply to "any interception that benefits an electronic communication service provider's business model"); *Gmail*, 2013 WL 5423918, at *10 (same).

Here, Heartland is not even an electronic communication service provider. It does not provide the phone lines in question and thus does not provide users with "the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). It merely contracts with RingCentral to obtain and provide those services to Heartland-supported dental practices. FAC

---

[8] *See*, *e.g.*, *In re Google Assist. Priv. Litig.*, 457 F. Supp. 3d 797, 818 (N.D. Cal. 2020) (holding exemption applies "only where an electronic communication service provider's interception *facilitates the transmission* of the communication at issue or is incidental to the *transmission*" of the communication) (emphasis added); *Matera v. Google Inc.*, No. 15-cv-04062, 2016 WL 8200619, at *9 (N.D. Cal. Aug. 12, 2016); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 844 (N.D. Cal. 2014); *In re Google Inc. Gmail Litig.*, No. 13-md-02430, 2013 WL 5423918, at *11 (N.D. Cal. Sept. 26, 2013).

¶¶ 28, 30. While the statute does not define the term "provider," courts interpreting a similar provision for stored communications have distinguished between companies that purchase or procure communications services and those that *furnish* those services as a business.[9]

Thus, Heartland's ability to rely on this exemption turns on RingCentral's ability to do so. And as explained in Plaintiff's concurrently filed opposition to RingCentral's motion to dismiss, RingCentral's phone products, which may qualify as an electronic communications service, are distinct from its AI products, which do not. FAC ¶¶ 11-25. RingCentral AI—the listening device facilitating the interceptions in this case—listens to the substance of conversations transmitted on RingCentral phone lines but is completely unnecessary to the provision of the phone service itself. *Id.* ¶ 26. Only RingCentral's phone connectivity qualifies as the business of providing an "electronic communication service." RingCentral AI, on the other hand, is a different product that analyzes the contents of communications, rather than one that "provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Analysis of patient sentiment, prediction of whether a patient is new or returning, and suggestions for upselling a patient have nothing to do with the ability to send or receive wire communications. Indeed, RingCentral's telephone services and RingCentral's AI features are sold separately from one another, meaning the AI features are not necessary to the provision of telephone services. FAC ¶¶ 26-27. Thus, in analyzing Plaintiff's phone calls with her dental provider, RingCentral was not acting as an electronic communications services provider (*i.e.*, in its capacity as a phone provider), but rather as a virtual consultant through its AI product. Its interceptions, therefore, are not exempt under the Wiretap Act. To hold otherwise would allow communication providers to "adopt any revenue-generating practice and deem it

---

[9] *Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1043 (N.D. Ill. 1998) (holding that a hired contractor that merely provides access to an email system is not providing an electronic communication service to the public); *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (online merchant was not an electronic communication service provider simply by maintaining a website that received electronic communications from customers); *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 308 (E.D.N.Y. 2005) (same).

'ordinary' by its own subjective standard," and swallow the rule. *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 844 (N.D. Cal. 2014); *In re TikTok*, 2024 WL 4367849, at *14. Heartland's two remaining authorities discuss the law enforcement exemption, not the service provider exemption.[10]

### 3. Heartland Used RingCentral's Interception For Its Own Benefit

Heartland argues it cannot be liable because there are no specific allegations that it intercepted patient calls "contemporaneously," mischaracterizing Plaintiff's allegations against Heartland as merely "access to routing data or stored information." Dkt. 42 at 10. This is incorrect. The Federal Wiretap Act prohibits "intercept[ing] . . . or procur[ing] any other person to intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(a). It also forbids "intentionally us[ing] . . . the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(d); *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709, 2025 WL 2210002, at *4-6 (N.D. Cal. Aug. 4, 2025) (denying motion to dismiss wiretapping claims on that basis).

Plaintiff alleges that Heartland knowingly installed RingCentral AI onto the phone system it obtained for its supported practices, that the technology "reviews all calls . . . in real-time," that RingCentral AI analyzed the contents of those calls, and that Heartland used that analysis to solicit appointments from potential patients. FAC ¶¶ 30, 33. Plaintiff's theory of liability is not reliant on whether Heartland intercepted Plaintiff's calls, but whether it *procured* RingCentral to eavesdrop on calls as they come into supported practices, and whether it *used* the data from the resulting interception. The cases Heartland cites for the proposition that interception must have occurred contemporaneously with the communication are irrelevant because it is undisputed that RingCentral's interceptions were contemporaneous.

---

[10] *Jandak v. Vill. of Brookfield*, 520 F. Supp. 815, 821-22 (N.D. Ill. 1981); *Amati v. City of Woodstock,* 176 F.3d 952, 954 (7th Cir. 1999).

### C. Plaintiff's Intrusion Upon Seclusion Claim is Properly Pled

Plaintiff has pled "(1) an unauthorized intrusion or prying into a plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matters upon which the intrusion occurred were private; and (4) the intrusion caused anguish and suffering." *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013) (cleaned up). "[T]he core of [intrusion upon seclusion] is the offensive prying into the private domain of another." *Lovgren v. Citizens First Nat'l Bank of Princeton,* 126 Ill.2d 411, 417 (1989) (citing Restatement (Second) of Torts § 652B cmt. a, b (1977)). An "example" is eavesdropping by wiretap. *Ramirez*, 729 F. Supp. 3d at 850. Private facts can include "health problems," *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67, 72 (2004), and "medical history," *Flores v. Aon Corp.*, 242 N.E. 3d 340, 360 (Ill. App. 2023).

Plaintiff's allegations demonstrate that RingCentral AI obtained private health information Plaintiff and Class Members shared with their dental providers, including their names, diagnoses, and need for treatment. FAC ¶¶ 30, 42, 65-68. These allegations are sufficient to put Heartland Dental on notice of Plaintiff's claims about the nature of the intrusion. *See Burrow v. Sybaris Clubs Int'l, Inc.*, No. 13-cv-2342, 2013 WL 5967333, at *3 (N.D. Ill. Nov. 8, 2013) (allegations that employer recorded phone conversations without consent sufficient at pleading stage); *Vega*, 958 F. Supp. 2d at 960; *Rucker v. Moventas, Inc.*, No. 16-cv-11169, 2017 WL 11717042, at *1 (N.D. Ill. Aug. 18, 2017). None of the cases cited by Heartland require more specific allegations at this stage.

Heartland's argument that the alleged intrusion was authorized also fails. Heartland relies only on cases that discuss the subsequent publication or disclosure of private, and indeed sometimes even public, facts, rather than the intrusion itself. *See Thomas v. Pearl,* 998 F.2d 447, 452 (7th Cir. 1993) (which Heartland mysteriously claims is a 2022 decision out of the Northern District of Illinois, Dkt. 42 at 13); *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) (consented disclosure of hospital records for research purposes), *Bonilla v. Ancestry.com Ops. Inc.,* 574 F. Supp. 3d 582, 596 (N.D. Ill. 2021) (disclosure of publicly available

information, yearbook photos);[11] *Ramirez,* 729 F. Supp. 3d at 850 (disclosure of publicly available information); *Juenger*, 2025 WL 2780221, at *6 (harm flowed from disclosure of medical records). Such cases are inapposite because Plaintiff alleges that her harm flowed from the intrusion—that is, eavesdropping—not merely disclosure. FAC ¶ 68.

Heartland also cites *Browning v. AT & T Corp.*, 682 F. Supp. 2d 832, 837 (N.D. Ill. 2009) for the proposition that an intrusion cannot be premised on conduct authorized by the Federal Wiretap Act, but that argument fails for the reasons discussed above. *See* Section IV.B.2, *supra*. To the extent Heartland argues that the intrusions were unauthorized because it was a service provider, that argument also fails for the same reasons, stated above. *See* Sections IV.B.1.c)IV.B.1.b) Similarly Heartland, in a footnote, argues that Plaintiff cannot use HIPAA to establish the basis for tort liability because it has no private right of action, citing to a single case that does not discuss tort liability whatsoever. *See* Dkt. 42 at 14, n. 10; *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011). In doing so, it ignores that a case it cites in the same section finds that a HIPAA violation may serve as the basis for a common law tort claim. *See Juenger*, 2025 WL 2780221, at *4.

Finally, Plaintiff does not have to allege further detail to support allegations of intrusion,[12] or anguish and suffering at the pleading stage, as Heartland suggests. *See Babnik v. Village of Antioch*, No. 21-cv-22, 2026 WL 686538, at *10 (N.D. Ill. Mar. 11, 2026) (denying motion to dismiss on these grounds). The authorities it cites only hold that a plaintiff must do more than allege that they have suffered generally. *See Spiegel v. McClintic,* No. 16-cv-9357, 2017 WL 4283727, at *8 (N.D. Ill. 2017) (plaintiff only pled that defendant "'proximately

---

[11] Heartland cites both *Dinerstein* and *Bonilla* for the proposition that "participation in a communication or routine data handling" are not offensive prying into another's private domain, when neither case addressed those questions. Dkt. 42 at 12. *Dinerstein* concerned a hospital's disclosure of patient medical records. 484 F. Supp. 3d at 594. *Bonilla*, on the other hand, was a right of publicity case that did not concern "communications" or "routine data handling" at all. 574 F. Supp. 3d 596.

[12] Heartland cites no cases for the proposition that a plaintiff must allege information identifying the "what and how" of the unauthorized intrusion. Allegations of wiretapping private conversations are sufficient. *Burrow*, 2013 WL 5967333, at *3.

damaged' him"); *McGreal v. AT & T Corp.*, 892 F. Supp. 2d 996, 1015 (N.D. Ill. 2012); *Heffron v. Green Tree Servicing, LLC,* No. 15-cv-0996, 2016 WL 47915, at *6 (N.D. Ill. Jan. 5, 2016); *Shea v. Winnebago Cnty. Sheriff's Off.,* No. 12-cv-50201, 2014 WL 4449605, at *7 (N.D. Ill. Sept. 10, 2014) (plaintiff omitted allegations of anguish or suffering entirely). Heartland's final case, *Minter v. AAA Cook Cnty. Consolidation, Inc.*, was decided at summary judgment for failure to produce *evidence* of mental anguish, not at the pleading stage. No. 02-cv-8698, 2004 WL 1630781, at *7 (N.D. Ill. July 19, 2004).

## V. CONCLUSION

Plaintiff respectfully requests that the Court deny Heartland's Motion to Dismiss in its entirety.

Dated: April 3, 2026

Respectfully submitted,

By: */s/ Nicole Cabañez*

Yaman Salahi (SBN 288752)
yaman@salahilaw.com
Nicole Cabañez (*pro hac vice*)
nicolec@salahilaw.com
**SALAHI PC**
505 Montgomery St., 11th Floor
San Francisco, California 94111
Tel: (415) 236-2352

*Attorneys for Plaintiff*