IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MEGAN LISOTA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEARTLAND DENTAL, LLC, a Delaware corporation, and RINGCENTRAL, INC., a Delaware corporation,<br><br>Defendants. | Case No. 1:25-cv-7518<br><br>Honorable Lindsay C. Jenkins |

**REPLY IN SUPPORT OF RINGCENTRAL, INC.'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE CLAIM**

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff Still Fails to Plead a Wiretap Act Claim .......... 2

1. The Ordinary Course of Business Exception Applies .......... 2

2. The FAC Makes Clear that Tru Family Dental and Heartland Consented to RingCentral's VoIP Services. .......... 7

B. Plaintiff's Derivative and Unsupported Intrusion Claim Must Be Dismissed .......... 9

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burns v. Masterbrand Cabinets, Inc.*,
874 N.E.2d 72 (Ill. App. 2007) .......... 10

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) .......... 10

*Freund v. Dialpad, Inc.*,
Case No. CGC-25-624953 (Cal. Super. Ct. Dec. 23, 2025) .......... 1, 2, 3

*In re Google Inc. Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. 2013) .......... 3, 6

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 9

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .......... 9

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. 2016) .......... 3, 5, 6

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 7

*Paine v. City of Chicago*,
2007 WL 647486 (N.D. Ill. Feb. 28, 2007) .......... 1, 3

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 9

**Statutes**

18 U.S.C. § 2510 .......... 6

Cal. Penal Code § 631 .......... 2

18 U.S.C. § 2511 .......... 2, 7, 9, 10

## I. INTRODUCTION

RingCentral's Motion to Dismiss ("Mot.") explained that Plaintiff's First Amended Complaint, Dkt. 39 ("FAC"), lacked the allegations necessary to survive dismissal—*i.e.*, "plausible allegations that RingCentral processed call data for reasons distinct from its communication service." Dkt. 38 ("MTD Order") at 7. Plaintiff's Opposition ("Opp.") largely does not contest that point. Instead, it simply disagrees with the Court's holding. MTD Order at 6. Indeed, the Opposition devotes more than four full pages to trying to convince the Court got it wrong, and that all Plaintiff should have been required to allege is that the services she challenges are not strictly "necessary to provide users the 'ability to send or receive' phone calls or messages." Opp. 5; *see also* Opp. 4-9.

Plaintiff's argument, however, is both improper and incorrect: Improper, because Plaintiff's Opposition is, in substance, nothing but a mislabeled motion for reconsideration; "[re]consideration is not available for arguments that have already been raised and rejected, or for arguments that could have been previously offered." *Paine v. City of Chicago*, 2007 WL 647486, at *1 (N.D. Ill. Feb. 28, 2007). Plaintiff's Opposition is incorrect, for all the reasons this Court already gave. Indeed, the correctness of this Court's ruling has only become more apparent, as courts have continued to reject theories exactly like Plaintiff's. In *Freund v. Dialpad, Inc.*, for instance, a California court recently rejected a similar lawsuit (filed by Plaintiff's same counsel) that likewise challenged the allegedly undisclosed application of AI-related services by a VoIP provider. Order on Demurrer to Am. Compl., Case No. CGC-25-624953 (Cal. Super. Ct. Dec. 23, 2025) ("*Dialpad* Order").[1] As *Freund* explained, employing analysis that tracks this Court's almost exactly, although the AI services were alleged to be "separate" products from the

[1] The *Dialpad* Order is attached hereto, in accordance with this Court's Case Procedures.

defendant's voice-calling services, they nevertheless qualified for California's version of the ordinary-course-of-business exception, Cal. Penal Code § 631(b) (exempting from wiretapping liability activities that are "for the purpose of construction, maintenance, conduct or operation of the services and facilities of the . . . telephone company"), because they were "intended to assist [the VoIP provider's] customers with customer service inquiries, and thus are part and parcel of the conduct or operation of its services." *Dialpad* Order 11 and n.6.

Plaintiff's Opposition fares no better as to the rest of RingCentral's arguments for dismissal. It fails to meaningfully rebut RingCentral's demonstration of how her FAC alleges that Heartland Dental and Tru Family Dental consented to the provision of RingCentral's services on her challenged calls, which therefore precludes liability under the federal Wiretap Act. And it mounts no independent defense at all of her intrusion upon seclusion claim—opting instead to make that claim entirely contingent on (and derivate of) her defective Wiretap Act claim. But even that fails because, as RingCentral already explained in a discussion Plaintiff simply ignores, regardless of how Plaintiff's Wiretap Act claim fares, an intrusion claim cannot be based on the mere *sharing* of private information, which is all that Plaintiff alleges here.

For these reasons and those set forth in the Motion, the Court should reject Plaintiff's second bite at the apple, dismiss her claims with prejudice, and end this lawsuit.

## II. ARGUMENT

### A. Plaintiff Still Fails to Plead a Wiretap Act Claim.

#### 1. The Ordinary Course of Business Exception Applies.

The Motion to Dismiss established (for the second time) that Plaintiff's Wiretap Act claim must be dismissed because RingCentral's complained of activities—namely, "real-time listening, transcription and analysis" of phone calls—are a "necessary" and "critical" part of its ordinary course of business, and therefore, exempt from liability under the Wiretap Act. Indeed, the Court

previously dismissed Plaintiff's claim on exactly this basis, but granted Plaintiff leave to amend to supply "plausible allegations that RingCentral processed call data for reasons distinct from its communication service." MTD Order 7. Plaintiff has made no attempt to do so.

Plaintiff's Opposition doubles down on that refusal, re-alleging the same business objectives as before—that RingCentral allegedly uses call data to "train its AI models and develop its own products and services for other customers," FAC ¶ 38; Compl. ¶ 27, which this Court already found were "at a minimum, incidental to the provision of RingCentral's electronic communication service," MTD Order 7—and insisting (at some length) that the Court was wrong to reject that them. But that *de facto* motion for reconsideration of this Court's prior Order is plainly improper, as Plaintiff simply repeats her same arguments, based on the same authorities that this Court has already rejected as inapposite. *Paine*, 2007 WL 647486, at *1.

In any event, as this Court already explained, none of those cases are on point here, as they all involve the factually distinct scenario of "targeted advertising informed by the content of intercepted emails and direct messages." MTD Order 7 (citing *Matera, Campbell, In re Facebook*); Opp. 7-8 (citing same); *see also* Opp. 5-8 (citing *In re Google Inc. Gmail Litig.*, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013), which likewise involved "Google's alleged interception of email content … *primarily* … ***to create user profiles and to provide targeted*** advertising, neither of which is related to the transmission of emails," 2013 WL 5423918 at *8). And other courts that have taken up this same issue agree, holding that a VoIP provider's use of call data to train its algorithms to improve its services for customers was "[b]y definition . . . to provide customer service support" and therefore, incidental. *See Dialpad* Order 12.

To the extent Plaintiff attempts to engage with (as opposed to simply resisting) the standard the Court required her to meet, she does so by arguing that RingCentral AI is a "distinct *product*"

from RingCentral's "Internet-based phone product, which facilitates the making and receiving of calls." Opp. 7 (emphasis added). According to Plaintiff, because the two offerings are separate "products," only the latter—*i.e.*, "RingCentral's phone connectivity"—"qualifies as the business of providing an 'electronic communication service.'" *Id*.

It is far from clear, however, what exactly Plaintiff even means by that. She offers nothing about how she purports to be determining what qualifies as a part of a single "product" versus separate "products." *Id.* Nor does the FAC include anything in the way of well-pled factual allegations on this point. Indeed, nearly everything it offers is purely conclusory assertions. *E.g.*, FAC ¶¶ 18, 20, 27.

And what few facts the FAC includes on this point actively *refute* the conclusion that Plaintiff seeks to draw from them. For instance, while the Opposition asserts that that the AI product is "wholly separate from its role as a provider of electronic communications services, i.e. telephones," Opp. 7 (citing FAC ¶¶ 11-17, 19, 20-25), the cited paragraphs actually state that RingCentral's "enterprise contact center solution is a ***comprehensive communication platform***"—singular—that "***combines***" several features, including "advanced routing capabilities, workforce management tools, and analytics to optimize customer service operations at scale." FAC ¶ 15 (emphases added); *accord*, *e.g.* FAC ¶ 12 (describing RingCentral's "cloud-based communication and customer engagement platform"—singular—that provides "global enterprise cloud communications"). Thus, to the extent Plaintiff has offered any factual allegations on the question, they tend to show that RingCentral's "Internet-based phone product" necessarily involves the provision of call-based analytics to its customers.

Just as important, Plaintiff hazards no explanation for why the distinction she seeks to draw between a single product and multiple products would matter anyway. She certainly cites no cases that predicated application of the ordinary-course-of-business exception on this distinction.[2]

Whatever Plaintiff's reasoning, this Court has already rejected the conclusion she draws from it, as a misinterpretation of Plaintiff's own cited authority. As this Court explained, under *Matera v. Google Inc.*, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)—the primary case on which Plaintiff relies—actions are exempt from liability so long as there is "a nexus between the interception's necessity and the services RingCentral provides." MTD Order 6 (quoting *Matera*, 2016 WL 8200619, at *14). It is thus emphatically not the case that "***only*** RingCentral's phone connectivity qualifies" under the exception. Opp. 7 (emphasis added). Rather, as Plaintiff is ultimately forced to acknowledge (though she tries to bury it), even her preferred authorities make clear that an "electronic communication service provider's interception" is immunized from liability if it ***either*** "***facilitates*** the transmission of the communication at issue ***or is incidental to*** the transmission" of the communication. Opp. 5.

As this Court has already found, RingCentral's AI services meet both of those criteria—(1) because RingCentral "bills its phone system as an AI-powered business communications platform. . . . it cannot ***facilitate*** its core service without real-time listening, transcription, and analysis," (MTD Order at 6-7) (emphasis added); and, (2) "training algorithms with call data—is, at minimum, '***incidental*** to the provision of RingCentral's electronic communication service,'" given that the FAC alleges that RingCentral "processes user data for purposes that 'include providing, monitoring, supporting, improving, and maintaining the Services,'" (*id.* at 7 (quoting

---

[2] And for good reason. It would be bizarre, to say the least, to condition federal criminal liability on anything so arbitrary as the sophistry of whether two pieces of technology (e.g., Word and Excel) constitute two distinct products or dual parts of a single product (e.g., Microsoft Office).

*Matera*, 2016 WL 8200619, at *14) (emphasis added). Therefore, under Plaintiff's own standard, both prongs are satisfied.

What is more, Plaintiff's own caselaw also makes clear that where an interception is deemed to fall outside of the ordinary-course-of-business exemption, it is often because it occurs on "physically" separate "devices" from the ones used to provide the communications "services," thereby rending the interception "physically and purposively unrelated." *In re Google*, 2013 WL 5423918, at *11. Here, by contrast, the FAC fails to allege either circumstance (even after being given leave to supply these very facts)—(i) physically, there are no allegations that RingCentral's AI related services operate on different systems; and (ii) purposively, there is no allegation (nor could there be) that RingCentral uses the contents of call data for any purpose other than maintaining and improving its provision of services to its customers.

As this Court has already recognized, this case falls very squarely within the inner heart of the ordinary course of business exception. The entire point of that exception is to allow electronic communications providers, like RingCentral, to develop new technologies that improve their services for the benefit of consumers, without fear of federal criminal liability.[3] Because the challenged services form a "critical" part of RingCentral's broader telecommunications offerings,

---

[3] Plaintiff only underscores her misunderstanding of the law with her suggestion that RingCentral's (and this Court's) understanding of the ordinary-course-of-business exemption would permit "the United States Postal Service … [to] open[] the mail it is supposed to deliver, read[] its contents, and then draft[] a response for the recipient to use." Opp. 1. There is an obvious and crucial difference between a person reading a citizen's mail and a computer running an algorithm to aid a customer service call—not least, because a person *always* necessarily makes their own use of the knowledge they gain (in forming opinions, etc.), whereas a computer algorithm can do nothing more than what is permitted by its programming, and thus can be strictly limited to make no independent use of the data at issue, and instead to function *only* for the consumer's benefit. This distinction is recognized in the law itself, which limits the ordinary-course-of-business exemption to an "electronic, mechanical, or other device," 18 U.S.C. § 2510(5), and hence would not apply to a person opening letters, as in Plaintiff's hypothetical.

they are offered in RingCentral's "ordinary course of business," and thus cannot form the basis of a Wiretap Act claim. And because Plaintiff has already been given leave to amend and has failed to remedy these deficiencies, the Court should dismiss without leave to amend.

### 2. The FAC Makes Clear that Tru Family Dental and Heartland Consented to RingCentral's VoIP Services.

Plaintiffs' Opposition resists application of the Wiretap Act's party exemption primarily by contending that "RingCentral is not a party to the communications." Opp. 9. That is wrong for the reasons already given in RingCentral's Motion. Mot. 8-9. But more importantly, it is beside the point. Even if the Court were to assume (as Plaintiff works so hard to argue, by exploiting strategic ambiguities in her own pleadings) that Tru Family Dental was the only party to the communications other than Plaintiff, that is still enough to show that the party exemption applies here. Indeed, Plaintiff's own pleading shows that Tru Family Dental consented to exactly the acts about which Plaintiff now complains, by expressly contracting for—and thereby, consenting to—RingCentral's services, including RingCentral's alleged "interception" of Plaintiff's calls. FAC ¶¶ 3, 5, 30, 33, 42; *see also id.* ¶ 1 (alleging that Tru Family Dental "partner[ed]" with Heartland to provide DSO services); *id.* ¶ 30 (alleging that Heartland "partnered" with RingCentral to provide phone services "[a]s a part of its DSO services). That is sufficient as a matter of law to satisfy the Wiretap Act's one-party consent requirement. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) (explaining that a party can "consent[]" to a technology provider's "receipt of the information" by "configur[ing]" their own technology infrastructure to provide them with that information).

On that point, Plaintiff's only response is to (again) attempt to strategically exploit the ambiguity in her own pleadings, insisting that "[c]onsent is necessarily [a] fact-intensive" inquiry, which cannot be decided at this stage, because Plaintiff has alleged no relevant facts. Opp. 11.

But even setting aside the perversity in allowing Plaintiff to take advantage of her own refusal to provide more facts (especially after this Court already admonished her for her pleadings' ambiguity on this score, *see* MTD Order 8-9), Plaintiff's argument is simply wrong. For one thing, this Court has already rejected Plaintiff's contention that consent cannot be decided at the pleadings stage. MTD Order 5, n.4. For another, as discussed above, Plaintiff's own allegations about Tru Family Dental—which her Opposition simply ignores—amply demonstrate consent.

As to Plaintiff's only remaining argument, about the crime-tort exception, Plaintiff finally admits that for her to avail herself of that exception, she must plausibly allege well-pled facts showing that RingCentral acted with the ***purpose*** of committing a tortious or criminal act. Opp. 12. However, Plaintiff goes on to ignore that entirely, and argue that, instead, she can survive a motion to dismiss based solely on her allegation of RingCentral's "unauthorized use or anticipated use of patient call data to improve RingCentral's AI products and services." Opp. 14. But the mere allegation of unauthorized ***use*** entirely fails to establish that RingCentral's ***purpose*** in that use was to violate HIPAA. In fact, she ends up arguing just the opposite—that RingCentral's purpose in intercepting the call data was "to train and improve its AI technology." Opp 13.

This is not just a pleading failure, but a substantive one that cuts to the core of her theory. As RingCentral already explained—in a discussion that Plaintiff simply ignores—RingCentral ***could not*** have acted for the purpose of violating HIPAA, as it is not even covered by (and thus cannot violate) that statute. While Plaintiff correctly recites that only "covered entities subject to HIPAA" face restrictions on their "use" of protected information, Opp. 12 (citing 45 C.F.R. § 164.502(b)), she then breezes right past that requirement—never attempting to even argue (much lead plead facts showing) that RingCentral is a "covered entity." Nor could she for the reasons set

forth in the Motion.[4]

Perhaps unsurprisingly, Plaintiff's cited case authorities fail to support her. Indeed, the caselaw she relies on here is inapplicable for the same reasons as *supra*—they involve situations where an entity transmitted patient health information to a third party for purposes of providing "targeted advertising." *See Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *1, 3 (N.D. Ill. Dec. 11, 2023) (finding allegations that use of pixel technology to transmit physician information data to a third party in order "to target [plaintiff] with particular advertising associated with her particular health conditions"; sufficiently alleged crime/tort exception because the interception was done "for the purposes of financial gain"); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (defendant "disclosed their Private Information to enhance its marketing efforts" and conduct "targeted advertising").

For these reasons, and those set forth in the Motion, Plaintiff cannot invoke the crime/tort exception and her Wiretap Act claim must be dismissed.

### B. **Plaintiff's Derivative and Unsupported Intrusion Claim Must Be Dismissed**.

RingCentral established that Plaintiff's intrusion upon seclusion claim must be dismissed

---

[4] For this reason, Plaintiff's argument that an "alleged HIPAA violation can[] be separated from the act of interception" is immaterial. Opp. 13. Whether or not a HIPAA violation is distinct or inseparable from an interception itself, RingCentral (as a non-covered entity) cannot commit such a violation. In any event, Plaintiff's argument is also incorrect. Unlike in all of her cited authorities, which involve situations where an entity installed pixel technologies to track and share data to unrelated third parties exclusively for the purpose of providing targeted marketing and advertising, there is no separate disclosure at issue here. As the FAC alleges, RingCentral is the entity that is providing the technology upon which her calls allegedly took place, and the AI related services were purportedly employed in "real-time" by RingCentral. Therefore, by her own allegations, she alleges no separate disclosure of her private information. *See, e.g.*, *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *5-6 (C.D. Cal. Jan. 13, 2025) (allowing claim to proceed where plaintiff alleged that "the violation stems from [the defendant's] intentional *disclosure* of the collected Private Information, which constitutes a 'further impropriety' independent and separate from [defendant's] *interception*," and thereby, the "intent to disclose private information predates and is distinct from the interception itself").

not only because it is derivative of her meritless Wiretap Act claim, but also because there is no intrusion as a matter of law where one recipient of personal information is alleged to have merely made it available to another. Mot. 11-15. Plaintiff does not dispute that if her Wiretap Act claim fails, then so too does her intrusion claim. *See* Opp. 15.

But in fact, her intrusion claim must be dismissed either way. Case after case makes clear that an intrusion claim cannot lie based solely on the disclosure of private information. Mot. 14-15 (collecting case law). Plaintiff does not even acknowledge—much less try to distinguish—any of that caselaw. Instead, she simply insists that her "intrusion upon seclusion claim is based on RingCentral's interception," not the "disclosure" of any information. Opp. 15. But as even Plaintiff is forced to acknowledge, in a case like this, those are two sides of the same coin. Opp. 15 (acknowledging conduct at issue "could be characterized as a disclosure"); *see also, e.g.*, *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) (rejecting intrusion claim based on "the University's disclosure and Google's receipt of" the plaintiff's protected health information).

Plaintiff's reliance on *Burns v. Masterbrand Cabinets, Inc.*, 874 N.E.2d 72, 74 (Ill. App. 2007)—in which one of the defendants hired a private investigator to "perform personal surveillance," including by seeking entry to plaintiff's home under "false pretense[s]," and "us[ing] a hidden camera in a fanny pack to record plaintiff's movement and conversation while plaintiff was inside his home," *id.*—gets her nowhere. Indeed, other than the perfunctory assertion that this case is somehow "comparable" to that one, Plaintiffs do not even attempt to argue how that vastly different factual scenario has any relevance here.

## III. CONCLUSION

For the reasons above, RingCentral respectfully requests that the Court dismiss Plaintiff's FAC without leave to amend.

Dated: April 24, 2026

Respectfully Submitted,

*/s/ Michael M. Rosenberg*

Michael M. Rosenberg (Ill. Bar No. 6340654)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
353 N. Clark Street, Ste. 3600
Chicago, IL 60654
Tel: (312) 924-9800
mrosenberg@orrick.com

Jacob M. Heath (Pro Hac Vice)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 614-7400
jheath@orrick.om

Sarah B. Meehan (N.D. Ill. Bar. No. 1658586)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202)339-8400
smeehan@orrick.com

*Attorneys for Defendant RingCentral, Inc.*

**CERTIFICATE OF SERVICE**

I, Michael M. Rosenberg, an attorney, do hereby certify that on April 24, 2026, I electronically filed the foregoing **REPLY IN SUPPORT OF RINGCENTRAL INC.'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM** with the Clerk of Court for the U.S. District Court, Northern District of Illinois, using the Electronic Case Filing system of the Court. I hereby certify that CM/ECF will serve the document on the following parties:

Yaman Salahi
yaman@salahilaw.com
Nicole Cabañez
nicolec@salahilaw.com
**SALAHI PC**
505 Montgomery Street, 11th Floor
San Francisco, CA 94111
*Attorneys for Plaintiff*

Danielle M. Kays
dkays@fisherphillips.com
**Fisher & Phillips LLP**
10 S. Wacker Drive
Suite 3450
Chicago, IL 60606

Amber N. Peters
apeters@fisherphillips.com
**Fisher Phillips LLP**
227 W. Trade Street
Suite 2020
Charlotte, NC 28202
*Attorneys for Heartland Dental, LLC*

*/s/ Michael M. Rosenberg*
Michael M. Rosenberg