**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MEGAN LISOTA,** individually and on behalf of all others similarly situated, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **Civil Action No. 25-cv-7518** |
| **v.** | § | |
| | § | |
| **HEARTLAND DENTAL, LLC,** a Delaware limited liability company, and **RINGCENTRAL, INC.,** a Delaware corporation, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANT HEARTLAND DENTAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff Fails to State a Federal Wiretap Claim Under Rule 12(b)(6) .......... 2

1. The Ordinary Course of Business Exception Applies to Heartland Dental .......... 2
2. The Party and Consent Exceptions Independently Bar Plaintiff's Wiretap Act Claim .......... 4
3. The Crime-Tort Exception Does Not Apply .......... 5

B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion .......... 7

1. Plaintiff Fails to Plausibly Allege "Eavesdropping" As Unauthorized .......... 7
2. Plaintiff Fails to Allege a Highly Offensive Intrusion .......... 8
3. Plaintiff Fails to Plausibly Allege Anguish or Damages .......... 8

C. Plaintiff's Attempt to Establish Standing by Invoking Privacy-Based Harms Fails Under Controlling Precedent .......... 9

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## Cases

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) ... 5, 6

*Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561 (N.D. Ill. 2020) ... 8

*Dinerstein v. Google, LLC*, 73 F.4th 502 (7th Cir. 2023) ... 9, 10

*Doe I v. Google, LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 7

*Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ... 5

*Gadelhak v. AT&T Servs., Inc*., 950 F.3d 458 (7th Cir. 2020) ... 10

*Hall v. Earthlink Network, Inc.,* 396 F.3d 500 (2d Cir. 2005) ... 8

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc*., 48 F.4th 1236 (11th Cir. 2022) ... 9

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) ... 8

*Juenger v. Deaconess Health Sys., Inc*., No. 3:24-CV-2332-NJR, 2025 WL 2780221 (S.D. Ill. Sept. 30, 2025) ... 7

*Kane v. Univ. of Rochester*, No. 23-cv-6207, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ... 6

*Kirch v. Embarq Mgmt. Co*., 702 F.3d 1245 (10th Cir. 2012) ... 8

*Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411 (1989) ... 7

*Matera v. Google LLC,* No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ... 3

*Nabozny v. Optio Sols. LLC*, 84 F.4th 731 (7th Cir. 2023) ... 9

*Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ... 7

*Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934 (7th Cir. 2022) ... 10

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:24-CV-00382-KDB-SCR, 2025 WL 880538 (W.D.N.C. Mar. 20, 2025) ... 5

*Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946 (N.D. Ill. 2024) ... 5

*Stewart v. Parkview Hospital*, 940 F.3d 1013 (7th Cir. 2019) ... 8

*United States v. Vest*, 639 F. Supp. 899 (D. Mass. 1986) ... 5

*Zak v. Bose Corp.*, No. 17-CV-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ... 5

## Statutes

18 U.S.C. § 2511(2)(d) ... 4, 5

## I. INTRODUCTION

Neither Plaintiff's amendments, nor the unsupported arguments in her Opposition, cure the critical defects already recognized by this Court. First, RingCentral's electronic telecommunications services fall within the "ordinary course of business" exception of the Federal Wiretap Act. (*See* Dkt. 38, p. 6. (holding RingCentral's services that "power every interaction with AI that integrates seamlessly across your calls," fall squarely within the ordinary business exception)). Indeed, RingCentral's services remain the same in the Amended Complaint as they did in the original Complaint, and they still qualify for the ordinary course of business exception because they are "AI products to 'power every interaction with AI that integrates seamlessly across [the] calls, messages, meetings, and contact center. . ..'" (*Compare* Dkt 39, ¶ 21; *with* Dkt. 1, ¶12; *see also* Dkt. 38, p. 6.)

Second, nothing in the Amended Complaint changes the applicability of the party and consent exception—Tru Family Dental consented to Heartland Dental's involvement in handling the calls.

Third, the undeniable consent by Tru Family Dental precludes Plaintiff from plausibly alleging a qualifying "interception" at all.

Finally, Plaintiff's amended allegations are so general that they magnify her lack of Article III standing for all claims and her deficient pleading of an intrusion upon seclusion. Plaintiff alleges only routine, authorized communication services; she does not plead any unauthorized and highly offensive conduct sufficient to support her intrusion upon seclusion claim. Plaintiff also fails to identify a concrete injury. Instead, she merely recites conclusory assertions of worry and embarrassment that fail to satisfy the requisite pleading standard.

Accordingly, Plaintiff's claims against Heartland Dental in the Amended Complaint remain deficient and should be dismissed in their entirety, without leave to amend.

## II. ARGUMENT

### A. Plaintiff Fails to State a Federal Wiretap Claim Under Rule 12(b)(6)

Plaintiff's Amended Complaint does not cure the defects previously identified by the Court. Instead, it repackages the same theory—that Defendants unlawfully "eavesdropped" on calls—but does not plead facts to support that an unlawful "interception" occurred. Plaintiff's Federal Wiretap Act claim fails for at least three independent reasons: (1) the alleged conduct falls within the ordinary course of business exception; (2) the party and consent exception applies, given that Tru Family Dental consented to Heartland Dental's involvement in handling the calls; and (3) Plaintiff fails to plausibly allege a qualifying "interception" at all.

#### 1. *The Ordinary Course of Business Exception Applies to Heartland Dental*

Plaintiff cannot overcome the Court's ruling that the RingCentral services at issue are exempt from a wiretapping claim under the ordinary course of business exception as they facilitate or are incidental to the provision of exempt communication services. (Dkt. 38, pp. 6-7.)

a. <u>*The Alleged Conduct Facilitates the Provision of Communication Services*</u>

While Plaintiff attempts to artificially divide RingCentral's offerings into "phone services" and "AI products" to defeat the application of the ordinary course of business exception, this Court has already rejected such a distinction. As the Court previously held, RingCentral's "core services," as plead in the original Complaint (and again in the Amended Complaint), are that it explicitly offers businesses a product that "power[s] every interaction with AI that integrates seamlessly across your calls, messages, meetings, and contact center[,]" and this type of service amounts to an electronic communication service utilized in the ordinary court of business. (Dkt. 39, ¶ 21.) Yet, Plaintiff pleads the same services in the Amended Complaint. (Dkt. 39, ¶¶ 2, 7, 12, 14, 29, 31.)

Moreover, her pleading does not actually support that false distinction. Plaintiff

acknowledges the lack of separate services by describing the challenged features (i.e., real-time transcription, summaries, and analytics) as embedded in the communications platform itself. (*Id.* ¶¶ 2, 14, 15, 19-27, 30-31.) Based on Plaintiff's own pleading, even though certain features may be marketed or priced separately, they are not a different "device" outside the provision of the service that is used in the ordinary course of business. Plaintiff's attempt to create such a distinction falls short of the Court's guidance that Plaintiff's wiretapping claim cannot succeed absent plausibly pleading the call data was processed for reasons distinct from the communication service. (Dkt. 38, p. 7 ("Absent plausible allegations that RingCentral processed call data for reasons distinct from its communication service, Lisota's protests fall flat.")) The call data was processed as part of RingCentral's communication service that Heartland Dental utilized to provide services to Tru Family Dental and thereby qualifies for the ordinary business exception.

b. *RingCentral's Qualification for the Ordinary Course of Business Exception Precludes a Claim Against Heartland Dental under the Wiretap Act*

The ordinary business exception also applies based on the derivative nature of Plaintiff's claim. (Dkt. 38, p. 8 (holding because RingCentral "is not liable under the Act, nor is Heartland Dental liable for procuring it.")) While Plaintiff argues that Heartland Dental is not a "provider," she does not plead any new facts to change the Court's prior analysis that RingCentral's conduct qualifies for the ordinary course of business exception; and therefore, Heartland Dental cannot be liable for procuring it. *See Matera v. Google LLC,* No. 15-CV-04062-LHK, 2016 WL 8200619, at *9 (N.D. Cal. Aug. 12, 2016) (finding ordinary course of business exception applies where there is "a nexus between the need to engage in the alleged interception and the [provider's] ultimate business, that is, the ability to provide the underlying service or good."). Plaintiff has not pled any facts in the Amended Complaint that change that outcome. The exception continues to apply because Heartland Dental used RingCentral's services to provide communication services to a

supported dental office.

### 2. *The Party and Consent Exceptions Independently Bar Plaintiff's Wiretap Act Claim*

Plaintiff's wiretapping claim also fails because the party and consent exceptions apply. These exceptions preclude liability where the defendant is a party to the communication or where one party has given prior consent. 18 U.S.C. § 2511(2)(d). That is exactly what Plaintiff alleges occurred—Heartland Dental used RingCentral's services to provide support to Tru Family Dental. (Dkt. 39, ¶¶ 1, 3, 28, 30, 57.) The Amended Complaint alleges Plaintiff called a dental practice that "utilizes Heartland's DSO services" and that Heartland Dental had implemented a unified phone system administered by RingCentral across supported practices. (*Id*. ¶¶ 5, 30-31.) These allegations plausibly establish that Tru Family Dental agreed to and authorized the use of Heartland Dental's communications infrastructure, including the involvement of RingCentral. As pled, the communications occurred through a contractual, integrated service relationship, not through unauthorized third-party interception. Where a business contracts for and uses a communications platform, it has effectively consented to the operation of that system and the participation of entities necessary to provide it. (Dkt. 38, pp. 8-9.) Because Tru Family Dental was Plaintiff's intended party to the communications and Tru Family Dental consented to the system through which those communications were handled, the party and consent exceptions apply.

The Amended Complaint also confirms that the party and consent exceptions apply as Heartland Dental itself was a party to at least some of the communications. As the Court previously observed it is "plausible that when [Plaintiff] called, either Tru Family Dental staff *or* Heartland [Dental] answered." (Dkt. 38, p. 8.) Plaintiff does not, and cannot, cure that fact, which provides an additional basis for the party and consent exceptions. Instead, Plaintiff concedes this argument by alleging that Heartland Dental may "grab" calls depending on availability and handle

communications with patients. (Dkt. 39, ¶ 31.) As a necessary participant to the communication, even if not the intended party, the party exception applies. *See Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 957 (N.D. Ill. 2024); *see also Zak v. Bose Corp.*, No. 17-CV-02928, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019). As Heartland Dental was a participant, it qualifies as a party and therefore the alleged communications cannot provide a basis for liability.

**3. *The Crime-Tort Exception Does Not Apply***

Plaintiff's wiretapping claim is not saved by the crime-tort exception. The exception is limited to an interception undertaken "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Plaintiff does not, and cannot, plausibly allege such a purpose.

To invoke the crime-tort exception, a plaintiff must plausibly allege either "(1) that the primary motivation, or (2) that a determinative factor in the actor's motivation for intercepting the conversation was to commit a criminal, tortious, or other injurious act." *United States v. Vest*, 639 F. Supp. 899, 904 (D. Mass. 1986); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (finding mere allegation that interception resulted in criminal or tortious act does not suffice). As courts have explained, "[h]ad Congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications resulting in a tortious or criminal act." *See Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *9 (N.D. Cal. Apr. 11, 2024). But it did not. Rather, the statute requires Plaintiff to plead that the interception was made for the purpose of committing a crime or tort. *See Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:24-CV-00382-KDB-SCR, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025) (dismissing Wiretap Act claim that did not plausibly allege "purpose for sharing individually identifiable health information was to breach HIPAA").

Plaintiff's allegations fall far short of this standard. The Amended Complaint alleges that the call-handling system was implemented to route calls, manage patient communications, and improve operational efficiency, including identifying missed appointment opportunities. (Dkt. 39 ¶¶ 30-33; *see also* ¶ 39.) These are routine business objectives, not criminal or tortious purposes. Plaintiff's conclusory assertions that Defendants acted unlawfully are insufficient to overcome the ordinary purpose of the communications. *See Caro*, 618 F.3d at 100 (requiring plausible allegations that interception itself was undertaken with specific purpose of committing an independent crime or tort).

Plaintiff's claims also fail because the alleged interception itself cannot serve as the predicate criminal or tortious act, and she does not allege an independent criminal or tortious act. Here, Plaintiff alleges the interception and disclosure to RingCentral occurred simultaneous to the communication between her and Heartland Dental. (Dkt. 39, ¶¶ 11, 22-23.) This is a single act of alleged interception, not the necessary separate, independent tort or crime. *See Kane v. Univ. of Rochester*, No. 23-cv-6207, 2024 WL 1178340, at *4 (W.D.N.Y. Mar. 19, 2024) (holding plaintiff must allege a purpose "independent of the intentional act of recording"). Further, Plaintiff's cited cases are distinguishable as they all allege the actual capture and transmission of specific identifiable health information to third parties through data-tracking technology.[1] That bears no

[1] *See Kurowski v. Rush Sys. for Health,* No. 22-cv-5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (alleged defendant deployed tracking pixels that captured and transmitted patients' provider identities, visit details, and other treatment-related data to third-party analytics companies for marketing); *Kane v. Univ. of Rochester*, No. 23-cv-6207, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (alleged website tracking tools collected and sold users' appointment-scheduling and provider-search information); *R.S. v. Prime Healthcare Serv., Inc.,* 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *4 (C.D. Cal. Jan. 13, 2025) (alleged intentional interception and disclosure of concrete medical details such as diagnoses, treatment history, and provider selections); *Strong v. LifeStance Health Group Inc*., No. 23-cv-00682, 2025 WL 317552, at *5 (D. Ariz. 2025) (same); *W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068-JSS-RMN, 2025 WL 722892, at *7 (M.D. Fla. Mar. 6, 2025) (alleging defendant "'intentionally intercepted the contents of Plaintiff's . . . electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any [s]tate.'"); *K.L. v. Legacy Health*, No. 3:23-cv-1886-SI, 2024 WL 4794657, *6 (D. Or. Nov. 14, 2024) (pleading healthcare provider disclosed patient communications to a third-party for financial gain).

resemblance to Plaintiff's allegations that RingCentral and Heartland Dental contracted for communication services, not to violate HIPAA or for any other tortious purpose. Indeed, such standard business services do not support the crime tort exception. *See Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (finding digital marketing and analytics purpose insufficient to invoke crime tort exception); *Doe I v. Google, LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (finding purpose in offering technology was not "to perpetuate torts on millions of Internet users" but to make money did not support crime tort exception).

**B. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion**

Plaintiff's intrusion upon seclusion claim fails as she does not plausibly plead an unauthorized, highly offensive intrusion into private affairs. Rather, the Amended Complaint describes routine, consented-to business communications facilitated through a communications platform—conduct that falls well outside the narrow scope of this tort.

***1. Plaintiff Fails to Plausibly Allege "Eavesdropping" As Unauthorized***

The "core" of an intrusion upon seclusion claim is an unauthorized and offensive prying into private affairs. *Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 417 (1989). As set forth above, Plaintiff admits Tru Family Dental consented to Heartland Dental's involvement in the communications at issue. (Dkt. 39, ¶¶ 5, 30-31.) She therefore cannot now re-characterize Heartland Dental as an unauthorized eavesdropper. Where a plaintiff voluntarily communicates with a business that has implemented a call-handling system through a service provider, there is no "unauthorized" intrusion as a matter of law. *Juenger v. Deaconess Health Sys., Inc.*, No. 3:24-CV-2332-NJR, 2025 WL 2780221, at *6 (S.D. Ill. Sept. 30, 2025). Likewise, actions taken in the ordinary course of business, including those justified by legitimate operational purposes, fall outside the scope of actionable intrusion. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1249

(10th Cir. 2012) (affirming data interception is incidental to the provision of internet services); *Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 505 (2d Cir. 2005) (affirming email provider's alleged interceptions were necessary to provide email services).

### 2. *Plaintiff Fails to Allege a Highly Offensive Intrusion*

Even if Plaintiff could allege an intrusion, she fails to allege the intrusion is "highly offensive to a reasonable person." Plaintiff alleges her calls were processed through a communications platform that includes features such as transcription and analytics. (Dkt. 39, ¶¶ 30-33, 39.) These are commonplace features of modern business communication systems. Such routine operational practices, particularly in customer service and communication contexts, are not "highly offensive" as a matter of law. *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 293-94 (3d Cir. 2016) (recognizing routine data collection practices serving legitimate commercial purposes).

Plaintiff's generalized references to "health information" do not change this analysis. She does not plausibly allege that any specific, sensitive medical information was improperly accessed or disclosed in a manner that would rise to the level of an egregious privacy invasion. Plaintiff's suggestion that HIPAA may serve as the basis for her claim is unavailing as courts routinely reject attempts to use HIPAA to create or expand common law tort liability. *Stewart v. Parkview Hospital*, 940 F.3d 1013, 1015 (7th Cir. 2019) (holding that HIPAA confers no private right of action and Congress vested enforcement authority in the Department of Health and Human Services, not private plaintiffs). Because Plaintiff merely speculates that private information *may* have been involved, she does not meet the requisite pleading standard.

### 3. *Plaintiff Fails to Plausibly Allege Anguish or Damages*

Plaintiff's intrusion upon seclusion claim also fails because she has not, and cannot, plead damages beyond her conclusory reference to "anguish and suffering." (Dkt. 39, ¶ 68.) While

Plaintiff claims detailed damages allegations are not required at the pleading stage, Plaintiff ignores that she has not alleged even the minimal factual content necessary to suggest emotional harm, let alone the type of concrete showing required at this stage. Plaintiff's bare assertion of "anguish and suffering" is precisely the conclusory allegation that *Twombly* and *Iqbal* forbid.

### C. Plaintiff's Attempt to Establish Standing by Invoking Privacy-Based Harms Fails Under Controlling Precedent

Plaintiff fails to establish Article III standing because her newly asserted privacy-related injury, intrusion upon seclusion, premised on alleged medical confidentiality concerns (rather than actual disclosures or injury), does not amount to a concrete injury. *Dinerstein v. Google, LLC*, 73 F.4th 502, 512-13 (7th Cir. 2023). Critically, the mere disclosure of personal information without more cannot establish a tortious invasion of privacy. *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735-36 (7th Cir. 2023); *see also Hunstein v. Preferred Collection & Mgmt. Servs., Inc*., 48 F.4th 1236, 1241-50 (11th Cir. 2022) (en banc).

As this Court has recognized, and discussed above, the "transmission of information to a single ministerial intermediary [does] not remotely resemble the publicity element" required for a public-disclosure claim and therefore does not constitute an injury sufficiently analogous to a recognized privacy tort. Dkt. 38, p. 4; *Nabozny*, 84 F.4th at 736. The Amended Complaint alleges that Heartland Dental contracted with Tru Family Dental to provide communication services and, in turn, utilized RingCentral to facilitate those communications. (Dkt. 39, ¶¶ 5, 7, 28, 31.) Such conduct does not implicate any risk of public disclosure and therefore bears no resemblance to a traditionally recognized privacy harm, or an alleged intrusion upon seclusion claim. (Dkt. 38 at 4; see also *Dinerstein*, 73 F.4th at 512-13.) As discussed supra, Plaintiff's allegations fail to make out a *prima facie* claim of inclusion upon seclusion or related harm, and therefore, she does not have standing.

Indeed, Plaintiff alleges no other concrete harm—nor can she. There are no allegations of repeated, harassing intrusions, no alleged prying into Plaintiff's affairs, and no disclosure to the public. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020) (finding standing where alleged harm included repeated, harassing and unwanted text messages). At most, Plaintiff's Amended Complaint challenges only the alleged, undisclosed participation of a service provider. Such allegations are insufficient to establish an Article III injury. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 936-39 (7th Cir. 2022) (holding emotional upset, confusion, or discomfort alone do not constitute concrete injuries under Article III).[2] In sum, because Plaintiff fails to allege a valid intrusion upon seclusion claim or any other concrete, historically recognized harm, she lacks standing.

## III. CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed *with prejudice*.

Dated: April 24, 2026 FISHER & PHILLIPS LLP

By: */s/ Danielle M. Kays*

DANIELLE M. KAYS (SBN 6284321)
AMBER N. PETERS (SBN 6324266)
XUAN ZHOU (admitted *Pro Hac Vice*)
dkays@fisherphillips.com
apeters@fisherphillips.com
xzhou@fisherphillips.com
Attorneys for Defendant
HEARTLAND DENTAL, LLC

[2] Plaintiff's citation to *Persinger v. S.W. Credit Sys., L.P.*, 20 F.4th 1184 (7th Cir. 2021) is unavailing as it involved conduct by the defendant outside of any interaction between the plaintiff and the defendant, the pulling of Plaintiff's credit information through a third-party. Further, Plaintiff's Response brief is contradictory. She takes issue with Heartland Dental citing debt collection matters, but then relies upon *Persinger*, which is a debt collection case that has nothing to do with the interception of a call.